Felipe MORALES, et al.,
Plaintiffs–Appellants,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY,
Defendant–Appellee.

No. 89–1085
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1990.

Antonio Cortez, El Paso, Tex., for plaintiffs-appellants.

Dan C. Dargene, El Paso, Tex., for defendant-appellee.

Before CLARK, Chief Judge,
WILLIAMS and DUHÉ, Circuit Judges.

PER CURIAM:

I.

Former employees of the Southern Pacific Transportation Company brought this action against the Company for breach of its collective bargaining agreements and for fraudulently inducing the employees to resign. The district court dismissed the action under Fed.R.Civ.P. 41(b) because the employees failed to exhaust their remedies under the bargaining agreements as required by the Railway Labor Act, 45 U.S.C. §§ 151–163 (the Act). The employees appeal. We affirm.

II.

In 1942, the Southern Pacific Transportation Company (the Company) entered into a collective bargaining agreement with various labor unions. The agreement established grievance procedures for the resolution of disputes between the Company, the unions, and the employees. The Company entered into an additional collective bargaining agreement in 1964 which afforded prospective benefits to employees displaced as a result of work transfers and abandonment of facilities. The 1964 agreement also established grievance procedures.

On May 1, 1987, the Company gave notice of its intent to discontinue twenty-two machinist positions and nine electrician positions at its Diesel Locomotive Maintenance Facility in El Paso, Texas. The Company planned to shut down its main operations at the facility and transfer most of the employees to other locations. The few remaining positions at the facility were to be allocated on the basis of seniority. Those who did not have seniority and who did not want to be transferred were to be placed on "unprotected furlough." The term "unprotected furlough" does not appear in either of the collective bargaining agreements.

Faced with the prospect of transfer or "unprotected furlough," some of the union employees began contacting the Company on an individual basis to negotiate a lump-sum payment in exchange for their unconditional resignations. The Company ultimately decided it would pay $15,000 to any machinist or electrician who wanted to tender an unconditional resignation, although the collective bargaining agreements did not require the Company to do so. A number of employees accepted the offer. The main operations at the El Paso facility ceased on July 31, 1987.

The Company purportedly experienced an unforeseen increase in its business between August and October of 1987. It decided to reopen the El Paso facility and recall twenty employees. The unions filled the positions available in each craft, and the facility reopened on October 10, 1987. Those who had tendered their unconditional resignations and relinquished their seniority in exchange for the $15,000 payment were not recalled.

Felipe Morales and eleven others who had tendered their resignations (the Employees) brought suit against the Company in federal district court claiming breach of the collective bargaining agreements, fraudulent inducement to resign, and breach of their resignation agreements. The suit proceeded to trial. At the close of the Employees' evidence, the district court granted the Company's motion to dismiss the action under Fed.R.Civ.P. 41(b) for failure to exhaust administrative remedies. The court found that none of the Employ-

ees had made a reasonable effort to pursue the remedies available under the collective bargaining agreements.

The Employees now appeal, claiming that failure to exhaust their administrative remedies was excused because the attempt would have been futile. They also contend that their state law claims do not require an interpretation of the collective bargaining agreements and therefore are not subject to the Act. We affirm.

## III.

The Railway Labor Act provides a comprehensive scheme of mandatory procedures for the prompt and orderly settlement of "major disputes" and "minor disputes" between carriers, unions, and employees. "Major disputes" relate primarily to the formation of collective bargaining agreements, while "minor disputes" mainly involve the interpretation of collective bargaining agreements and the resolution of lesser disputes related to the employment relationship. *See Hendley v. Central of Ga. R.R.*, 609 F.2d 1146, 1150 (5th Cir. 1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981); *Brown v. American Airlines, Inc.*, 593 F.2d 652, 653 & n. 1 (5th Cir.1979).

The Act allows carriers and their employees to negotiate their own grievance procedures for "minor disputes," up to resolution by the chief operating officer of the carrier. Matters left unresolved are referred to the National Railroad Adjustment Board. *See* 45 U.S.C. § 153 First; *Mayon v. Southern Pacific Transp. Co.*, 805 F.2d 1250, 1251 (5th Cir.1986). Carrier employees claiming a violation of their collective bargaining agreements must first exhaust these remedies before filing suit. *See Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 321–26, 92 S.Ct. 1562, 1563–66, 32 L.Ed.2d 95 (1972); *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir.1978).

In the present case, the district court found that none of the Employees had made a reasonable effort to exhaust the remedies provided under the collective bargaining agreements. The Employees argue on appeal that failure to exhaust these remedies was excused because an attempt to assert them would have been futile. *See Rabalais*, 566 F.2d at 519. They claim union officials were hostile towards those members who unilaterally negotiated resignation agreements with the Company. We reject these contentions.

The Employees' claims of futility are premature. The district court found no evidence that any of the Employees had filed any type of grievance with the unions. The district court's findings also imply that the Employees failed to show it would have been useless to file a grievance. Under these circumstances, the Employees must at least attempt to assert their remedies under the collective bargaining agreements before claiming futility. *See Grover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 330–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967).

The Employees argue alternatively that the district court should have adjudicated their state law claims against the Company for fraudulent inducement to resign and for breach of the resulting resignation agreements. They contend these claims are independent of the collective bargaining agreements and therefore do not constitute "minor disputes" under the Act. We disagree.

State law claims which grow out of the employment relationship can constitute "minor disputes" under the Act, even when the claims do not arise directly from the collective bargaining agreement itself. *See, e.g., Leu v. Norfolk & Western Ry. Co.*, 820 F.2d 825, 829–30 (7th Cir.1987) (claim for medical expenses). If the state law claim is "inextricably intertwined" with the terms and conditions of employment under the collective bargaining agreement, the claim constitutes a "minor dispute" under the Act and is subject to the grievance procedures contained in the bargaining agreement. *See Minehart v. Louisville & Nashville R.R. Co.*, 731 F.2d 342, 344–45 (6th Cir.1984).

In the present case, the Employees' state law claims cannot be properly adjudicated

without considering the terms and conditions of their employment under the collective bargaining agreements. This interdependence can be shown in at least two ways. First, some of the misrepresentations the Company allegedly made to the Employees to induce them to resign related to their rights under the collective bargaining agreements. For example, the Employees claim they agreed to resign in part because the Company told them they had to choose between being transferred or being placed on "unprotected furlough." There was some confusion among company employees about what the term "unprotected furlough" meant, since the term did not appear in either of the collective bargaining agreements. An adjudication of the Employees' claims would therefore require a determination of what the term "unprotected furlough" meant in the context of the collective bargaining agreements and what options were available to the Employees.

Second, if the Employees were successful on their claims, the district court would have to determine the Employees' substantive rights under the collective bargaining agreements in order to fashion an appropriate remedy. While there well may be others, these two examples of the interdependence of the Employees' state law claims and the collective bargaining agreements are sufficient to support the district court's conclusion that the Employees' claims are "inextricably intertwined with the terms and conditions of [their] employment" and constitute "minor disputes" under the Act. As such, the claims are subject to the grievance procedures contained in the collective bargaining agreements. We conclude that the district court properly dismissed this action under Fed.R.Civ.P. 41(b) for failure to exhaust administrative remedies.

## IV.

The judgment of the district court is AFFIRMED.