United States Court of Appeals,

Fifth Circuit.

No. 93-2069.

Thomas Henry ANDERSON, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC., Defendant-Appellee.

Sept. 24, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

The question presented in this appeal is whether the Railway Labor Act or the Federal Aviation Act "completely pre-empts", and thus confers federal jurisdiction over, Thomas Anderson's state law claim that American Airlines ("American") retaliated against him for filing a workers' compensation claim. Because we find that Anderson's claim is not completely pre-empted, we reverse. We therefore remand with instructions to vacate the judgment and remand this case to the state court from which it was removed.

I

Anderson was employed as an aircraft mechanic for American at Houston's Intercontinental Airport. On January 5, 1990, while riding on a bus from an employee parking lot, Anderson injured his back when the bus driver made a sudden stop. After several weeks, the pain from this injury forced Anderson to begin losing time from work. Anderson then filed a claim for workers' compensation benefits. Anderson's physician, Dr. Gerald DeLuca, later cleared Anderson to return to work. Some, but not all, of Dr. DeLuca's letters counseled Anderson to avoid lifting over twenty-five pounds. Independently, American's medical department concluded that Anderson should avoid heavy lifting, and American decided that Anderson's physical condition disqualified him from returning to his duties as an aircraft mechanic.

Anderson has two sources of rights that are relevant to his dispute with American: the Texas

Workers' Compensation Act and a collective bargaining agreement ("CBA") between American and the Transport Workers Union of America, AFL-CIO. The Texas Workers' Compensation Act protects Anderson from retaliation for filing a workers' compensation claim. Under this Act, employers are generally held liable to employees for injuries that employees receive in the course of their duties. Employers then pay fixed amounts for each accident that occurs and receive immunity from most common law claims that arise out of these accidents. Injured employees, in turn, receive prompt payments from their employers without regard to fault or negligence. An important component of this scheme is the statute that prohibits retaliation against employees who file workers' compensation claims in good faith. *See* Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon supp.1993).

The CBA governs the terms and conditions of Anderson's employment. It does not expressly prohibit retaliation for filing a workers' compensation claim. It does, however, set up a grievance procedure to be followed to resolve questions about an employee's medical ability to perform his or her job. According to the CBA, if an employee's physician and an employer's physician do not agree about the employee's physical fitness to perform his or her duties and the employer disqualifies the employee from work, the employee can appeal the employer's decision to a System Review Panel. If the System Review Panel is unable to resolve the dispute, the CBA provides that the issue can be referred to a System Professional Medical Board. The Medical Board is composed of a doctor chosen by the employee, a doctor chosen by the employer, and a third doctor agreed upon by the first two. A majority of the Medical Board is empowered to determine whether the employee's medical condition warrants his or her return to work. The Medical Board's decision is final and binding on both the employer and the employee.

After American refused to allow Anderson to return to work as an aircraft mechanic, Anderson sought a review of this decision through the CBA's medical grievance procedures. Anderson first appealed to the System Review Panel. When the Panel was unable to resolve the issue, Anderson's case was referred to the System Professional Medical Board. However, the Medical Board never met. Instead, American informed Anderson that since his physician and American's medical department agreed that he should avoid lifting over twenty-five pounds, it would

not be necessary to obtain a third doctor for further evaluation because a majority of the Board agreed about Anderson's condition. American stated that since Anderson's condition prevented him from performing the full scope of his duties, he could not "return to [his] former job of Aircraft Mechanic."

Anderson then filed this suit in the 333rd Judicial District Court of Harris County, Texas. Significantly, Anderson alleged only that American violated article 8307c of the Texas Revised Civil Statutes by retaliating against him for seeking benefits under the Texas Workers' Compensation Act. However, American removed this case to the United States District Court for the Southern District of Texas, contending that federal question jurisdiction existed because federal law pre-empted Anderson's article 8307c claim.[1] The district court denied Anderson's motion to remand, finding that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.,* and the Federal Aviation Act, as amended by the Airline Deregulation Act, ("Aviation Act"), 49 U.S.C.App. § 1301 *et seq.,* pre-empted Anderson's state law claim and conferred federal question jurisdiction over the case. The district court then granted American's motion for summary judgment and dismissed the case. Anderson appeals.

## II

We review the district court's grant of summary judgment de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issue of material fact existed and whether the district court correctly applied the relevant law. *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 814-15 (5th Cir.1993).

## III

Our first task is to determine whether the district court had jurisdiction to hear this case. Anderson claims only that he was retaliated against by American for filing a workers' compensation claim. State law prohibits this sort of retaliation. *See* Tex.Rev.Civ.Stat.Ann. art. 8307c. Thus, the face of Anderson's complaint does not state a federal cause of action. However, American removed this case to the district court pursuant to 28 U.S.C. § 1441(b), contending that that court had original

---

[1]American does not assert that diversity jurisdiction exists.

federal question jurisdiction under 28 U.S.C. § 1331 because the RLA and the Aviation Act pre-empted Anderson's claim.

It is axiomatic that the plaintiff is the master of his or her complaint. Generally, a plaintiff raises the claims that he or she wishes to pursue and omits those that he or she does not wish to pursue. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A defendant may remove a state court action to federal court only if the action could have originally been filed in federal court. 28 U.S.C. § 1441. Thus, where there is no diversity jurisdiction, a federal question must be present in order for removal to be proper. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429. In other words, if a question of federal law does not appear on the face of a plaintiff's complaint, federal question jurisdiction does not exist, and removal is improper. The presence of a federal defense will not usually create federal question jurisdiction. Thus, removal on the basis of a federal defense, such as pre-emption, is generally improper. *Id.* at 392-93, 107 S.Ct. at 2429-30. However, there is a doctrine known as "complete pre-emption" which American asserts to be applicable in this case. The Supreme Court teaches us that under the "complete pre-emption" doctrine, the pre-emptive force of a federal statute is occasionally "so "extraordinary' that it "converts an ordinary state common-law complaint into one stating a federal claim....' " *Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

The issue here is whether we have complete pre-emption. As we have stated, Anderson's complaint only raises a state law claim. American, however, argues that both the RLA and the Aviation Act completely pre-empt Anderson's claim. If either of these statutes completely pre-empt an article 8307c claim, federal question jurisdiction exists, and removal of this case was proper. However, if neither of these statutes completely pre-empt Anderson's article 8307c claim, no federal question jurisdiction exists, and removal of this case was improper. We will examine Anderson's article 8307c claim and the pre-emptive effect of the RLA and the Aviation Act in turn.

A

Anderson's sole claim against American is an article 8307c claim. Article 8307c provides that:

> Sec. 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.
>
> Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon supp.1993). To establish a claim under this act, the employee bears the initial burden of establishing a causal link between the adverse employment action that the employee has suffered and the workers' compensation claim. *Trevino v. Corrections Corp. of Am.,* 850 S.W.2d 806, 808 (Tex.App.—El Paso 1993, writ denied). The retaliation only needs to be *a* determining factor of the discrimination that an employee has suffered. *Id.* Once an employee has established the required causal link, the employer must articulate a legitimate reason for its alleged discrimination. *Id.* The basic issue in an article 8307c claim, therefore, is whether retaliatory discrimination has occurred.

B

Congress enacted the RLA to promote stability in the relationship between labor and management in the railroad industry and "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. In Title II of the Act, Congress made the RLA applicable to the airline industry. 45 U.S.C. §§ 181-188. The RLA dispute resolution provisions that apply to the airline industry require that "disputes between an employee ... and a carrier ... growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" must be arbitrated. 45 U.S.C. § 184. These controversies have been termed "minor disputes". *See Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 321-22, 92 S.Ct. 1562, 1563-64, 32 L.Ed.2d 95 (1972); *Morales v. Southern Pacific*

*Transport Co.,* 894 F.2d 743, 745 (5th Cir.1990). The RLA's arbitral remedy is mandatory and exclusive for minor disputes. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303-04, 109 S.Ct. 2477, 2480-81, 105 L.Ed.2d 250 (1989) ("*Conrail* "). State law claims that involve these disputes are pre-empted. *Id.; Davies v. American Airlines, Inc.,* 971 F.2d 463, 465 (10th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993).

The distinguishing characteristic of a minor dispute is that it "may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Conrail,* 491 U.S. at 305, 109 S.Ct. at 2481. We have explained that a state law claim can involve a minor dispute and hence be pre-empted by the RLA if the state law claim is " "inextricably intertwined' with the terms and conditions of employment under the collective bargaining agreement." *Morales,* 894 F.2d at 745. Our definition of a minor dispute in *Morales* is consistent with the definition of a minor dispute articulated in *Conrail.* In *Morales,* we held that the state law claims asserted in that suit were inextricably intertwined with the collective bargaining agreement because they could not be properly adjudicated without interpreting the terms and conditions of the applicable collective bargaining agreement. *Id.* at 745-46.[2]

Thus, if a plaintiff's state law claim requires an interpretation of a collective bargaining agreement, then the claim involves a minor dispute, the RLA's compulsory grievance procedure is the only avenue open to the plaintiff, and state courts lack jurisdiction to hear the claim. Conversely, if a plaintiff's state law claim does not require an interpretation of a collective bargaining agreement, then the claim does not involve a minor dispute, the RLA does not pre-empt the claim, and a state court is a proper forum.

This pre-emption analysis parallels the test that the Supreme Court articulated in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 408-10, 108 S.Ct. 1877, 1882-84, 100 L.Ed.2d 410 (1988), for determining when section 301 of the Labor Management Relations Act ("LMRA"), 29

---

[2]Other circuits have also held that employment disputes are minor only if they require interpretation of a collective bargaining agreement. *See Davies,* 971 F.2d at 468; *Deford v. Soo Line R.R. Co.,* 867 F.2d 1080, 1085 (8th Cir.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

U.S.C. § 185, pre-empts state law claims. In *Lingle* the Court explained that the LMRA only pre-empts state law claims whose resolution turns on the meaning of a collective bargaining agreement: "[I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law ... is pre-empted and federal labor law principles ... must be employed to resolve the dispute." *Id.* at 405-06, 108 S.Ct. at 1881-82. The Court emphasized that the LMRA does not pre-empt state law claims whose resolution does not depend on an interpretation of a collective bargaining agreement. *Id.* & n. 5. States remain free to create and enforce substantive rights in the labor relations context so long as the vindication of those rights does not require an interpretation of a collective bargaining agreement. *Id.* at 411-12, 108 S.Ct. at 1884-85.[3]

In other RLA pre-emption cases, other circuits have relied upon the analytical framework set out in *Lingle* to determine the scope of RLA pre-emption. *See, e.g., O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1, 4 (1st Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993); *Davies,* 971 F.2d at 466-67. Moreover, in cases in which courts have found that the RLA did not pre-empt a state law claim, courts have emphasized that an interpretation of a collective bargaining agreement was not necessary. For example, in *Davies,* the Tenth Circuit held that the RLA did not pre-empt an Oklahoma common law tort claim for wrongful discharge in violation of public policy. The plaintiff in that case alleged that he was discharged for engaging in union activities, a tort under Oklahoma law. The company argued that this claim required an interpretation of a provision of the applicable collective bargaining agreement because that agreement protected the plaintiff from discharge without just cause. The *Davies* court held that since the resolution of the state law claim did not depend on an interpretation of the collective bargaining agreement's just cause provision, the state law claim was not pre-empted. *Davies,* 971 F.2d at 466. Conversely, in cases

---

[3]Furthermore, it is of no consequence that the facts that may be relevant to resolving a minor dispute under a collective bargaining agreement may be the same as the facts that may be relevant to resolving a state law claim. "[E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the [state law] claim is "independent' of the agreement for § 301 pre-emption purposes." *Lingle,* 486 U.S. at 409-410, 108 S.Ct. at 1883-84.

in which courts have found that the RLA did pre-empt a state law claim, courts have concluded, as in *Lingle,* that the resolution of the state law claim required an interpretation of a collective bargaining agreement. For example, in *O'Brien,* the First Circuit held that the RLA pre-empted a Massachusetts law that prohibited discrimination on the basis of physical disability. The Massachusetts law prohibited disability discrimination if the disabled person was " "capable of performing the essential functions of the position....' " *Id.* at 2 (citation omitted). However, since the collective bargaining agreement governed the fitness and ability of an employee to perform the position's functions, resolution of whether a person was "capable of performing the essential functions of the position" required an interpretation of the applicable collective bargaining agreement. Hence, the disability discrimination claim was pre-empted. *O'Brien,* 972 F.2d at 5. The Sixth and Ninth Circuits have employed similar analyses to find other state disability discrimination laws pre-empted. *See McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294 (6th Cir.), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed. 166 (1988); *Croston v. Burlington Northern R.R. Co.,* 999 F.2d 381 (9th Cir.1993).[4]

American suggests that our reliance upon *Lingle* (an LMRA case) is insufficient because RLA pre-emption is broader than LMRA pre-emption. We do not agree. Some courts have noted that RLA pre-emption is broader than LMRA pre-emption because RLA pre-emption is statutory in origin while LMRA pre-emption is not. *See, e.g., Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307 (9th Cir.), *cert. denied,* 498 U.S. 958, 111 S.Ct. 386, 112 L.Ed.2d 397 (1990).[5] However, we concur

---

[4]Other cases that American has cited in which courts have found that the RLA pre-empts state law claims are not to the contrary. For example, in *Calvert v. Trans World Airlines, Inc.,* 959 F.2d 698 (8th Cir.1992), the Eighth Circuit found a claim for intentional infliction of emotional distress pre-empted by the RLA. However, the court concluded that the plaintiff's claim in that case arose out of and depended upon an "interpretation and application of the collective bargaining agreement." *Id.* at 700.

[5]Even those courts recognize that in many cases the standards used to determine pre-emption are the same. In *Croston v. Burlington Northern Railroad,* the Ninth Circuit cited *Grote* 's conclusion that RLA pre-emption was broader than LMRA pre-emption but then applied a test much like the one we use today. *See* 999 F.2d at 388 (analyzing related precedents to see if they "involve[d] interpretation" of a collective bargaining agreement); *Id.* at 388 n. 3 (stating that it was applying "at least the same standard [as *Lingle* ] for determining preemption under the RLA, i.e., whether resolving ... [the state claim] requires construing the collective bargaining agreement").

with the Tenth Circuit's conclusion that the distinctions between RLA pre-emption and LMRA pre-emption are irrelevant to the pre-emption inquiry in this case: whether Anderson's state law claim requires an interpretation of the CBA. *See Davies,* 971 F.2d at 467 & n. 5.

We have turned to LMRA pre-emption cases because in *Jones v. Roadway Express, Inc.,* 931 F.2d 1086 (5th Cir.1991), *reh'g denied,* 936 F.2d 789 (5th Cir.1991), we held that the LMRA did not pre-empt an article 8307c claim since the resolution of such a claim did not require an interpretation of the applicable collective bargaining agreement. We see no reason to reach a different result here when the question is whether the RLA pre-empts an article 8307c claim. As Judge Wiener succinctly concluded, "the basic issue in [an article 8307c claim] is whether a retaliatory discharge occurred. Resolution of this issue does not require an interpretation of the CBA." *Jones,* 931 F.2d at 1090.

While the *Jones* court noted that "either party may still use the CBA to support the credibility of its claims," such reliance does not show that an interpretation of the CBA is necessary to resolve Anderson's claim. *Id.* In other words, alt hough American may defend against Anderson's article 8307c claim by arguing that its actions were justified by the CBA and its rules concerning the physical ability of employees to perform their duties, such reliance does not necessarily transform Anderson's article 8307c claim into a claim that requires an interpretation of the CBA.[6]

American contends that since the CBA governs whether an employee is physically capable of performing his or her duties, the availability of reinstatement under article 8307c makes the resolution of an article 8307c claim dependent upon the CBA. American thus concludes that the RLA completely pre-empts Anderson's article 8307c claim. However, the premise of American's

---

[6]Thus, *Medrano v. Excel Corp.,* 985 F.2d 230 (5th Cir.), *petition for cert. filed,* 61 U.S.L.W. 3836 (U.S. June 7, 1993) (No. 92-1937), is distinguishable. In that case, we emphasized that Medrano's claim was "not a typical straightforward case alleging a retaliatory discharge in violation of article 8307c." *Id.* at 233. Instead, we confronted a situation in which Medrano's article 8307c claim "clearly require[d] construing the CBA" because Medrano alleged that a provision of the CBA itself discriminated against employees who settled their workers' compensation claims. *Id.* at 234. We therefore held that the LMRA pre-empted Medrano's claim. In the present case, however, Anderson's complaint simply alleges that American retaliated against him because he filed a workers' compensation case. This claim does not require interpretation of the CBA.

argument does not lead to the conclusion it seeks. Even if we were to hold that the RLA pre-empts reinstatement under article 8307c, we would not hold that the RLA pre-empts a claim for money damages under article 8307c. Thus, we cannot conclude that the RLA *completely* pre-empts an article 8307c claim. And without complete pre-emption, there is no federal question jurisdiction.

We therefore hold that since Anderson can obtain relief under article 8307c without an interpretation of the CBA, the RLA does not completely pre-empt Anderson's article 8307c claim. Hence, the RLA does not provide a basis for federal question jurisdiction over this suit.

C

The Aviation Act established a comprehensive scheme for federal regulation of the aviation industry. In 1978, Congress passed the Airline Deregulation Act ("ADA") to amend the Aviation Act and deregulate certain aspects of the aviation industry. The ADA authorized the Department of Transportation to establish rules and regulations to "promote safety of flight of civil aircraft." 49 U.S.C.App. § 1421(a). The ADA also expressly pre-empted the states from "enact[ing] or enforc[ing] any law ... relating to rates, routes, or services of any air carrier...." 49 U.S.C.App. § 1305(a)(1). American argues that this pre-emption clause pre-empts Anderson's article 8307c claim because article 8307c "relates to" American's "services" and the safety of those services.

The Supreme Court has held that the Aviation Act's pre-emption clause pre-empts state laws that have "a connection with or reference to" airline rates, routes, or services. *Morales v. Trans World Airlines, Inc.,* --- U.S. ----, ----, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). In *Morales,* the Court found that the ADA pre-empted states' efforts use their consumer protection statutes to prohibit allegedly deceptive airline fare advertisements because this use of the state statutes related to airline fares. However, the Court cautioned that the pre-emptive sweep of section 1305(a)(1) was not infinite: " "[S]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Id.* at ----, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

Following the Supreme Court's cautionary note in *Morales,* we can safely conclude that the Aviation Act does not pre-empt a claim for money damages under article 8307c. Any effect that such

a claim may have on American's services is far too remote to trigger pre-emption. We need not consider whether the Aviation Act pre-empts the availability of reinstatement under article 8307c. Even if we were to hold that the Aviation Act (and the regulations promulgated under that Act to establish minimum requirements for certification of aircraft mechanics) pre-empts the availability of reinstatement under article 8307c because that remedy more directly "relates to" American's services, we would not conclude that the Aviation Act completely pre-empts Anderson's article 8307c claim because a claim for money damages would still be available.

The limited nature of the complete pre-emption doctrine further supports this conclusion. We have required there to be "a clearly manifested congressional intent to make state claims removable to federal court." *Beers v. North American Van Lines, Inc.,* 836 F.2d 910, 913 n. 3 (5th Cir.1988). We cannot find that Congress clearly intended that the Aviation Act's pre-emption clause makes Anderson's state law claim for retaliation for filing a workers' compensation claim removable to federal court. Thus, we cannot conclude that the Aviation Act completely pre-empts Anderson's article 8307c claim.

We therefore hold that the Aviation Act does not completely pre-empt Anderson's article 8307c claim and that the Aviation Act does not confer federal question jurisdiction over this suit.

D

Since we have found that neither the RLA nor the Aviation Act completely pre-empts Anderson's state law article 8307c claim, Anderson's claim does not arise under federal law. Therefore, removal of this case was improper, and the district court lacked jurisdiction to hear it. Without jurisdiction, the district court had no power to render a judgment in this case. Hence, the judgment of the district court is REVERSED, and this suit is REMANDED with instructions to vacate the judgment and remand the case to the state court from which it was removed. *See Jones,* 931 F.2d at 1092.