**CALIFORNIANS FOR SAFE AND COMPETITIVE DUMP TRUCK TRANSPORTATION, et al., Plaintiffs,**

**v.**

**Roberta MENDONCA, et al., Defendants.**

**No. C–96–03430 MHP.**

United States District Court,
N.D. California.

Feb. 4, 1997.

Ellis Ross Anderson, Anderson Donovan & Poole, San Francisco, CA, for Californians for Safe and Competitive Dump Truck Transp., Lindeman Brothers, Inc. and Yuba Trucking, Inc.

Miles E. Locker, Division of Labor Standards Enforcement, Dept. of Indus. Relations, San Francisco, CA, for Robert E. Mendonca, Lloyd W. Aubry, California Dept. of Indus. Relations and California Dept. of Labor.

Irene B. Moy, CA Dept. of Transp., San Francisco, CA, for James W. Van Loben Sels and California Dept. of Transp.

Scott A. Kronland, Altshuler Berzon Nussbaum Berzon & Rubin, San Francisco, CA, for International Broth. of Teamsters, AFL-CIO.

### MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiffs Californians for Safe and Competitive Dump Truck Transportation and others brought this action against defendants Roberta E. Mendonca and other directors of certain state agencies of the State of California seeking (1) a declaration that California Labor Code sections 1770–80 ("Prevailing Wage Law") are unconstitutional as preempted by 49 U.S.C. section 14501 and as an impermissible burden on interstate commerce; and (2) an injunction preventing enforcement of the Prevailing Wage Law against plaintiffs. Now before the court is defendants' motion to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The International Brotherhood of Teamsters has moved to intervene as a defendant in this action and has filed a brief as amicus curiae in support of defendants' motion to dismiss. The court granted the motion to intervene and has reviewed the submissions of the intervenors.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

## BACKGROUND [1]

Plaintiff Californians for Safe and Competitive Dump Truck Transportation (CSCDTT) is an association of motor carriers operating in California, formed to improve dump truck transportation in California and to help its members resolve common problems and grievances. The two additional plaintiffs, Lindeman Brothers, Inc. and Yuba Trucking, Inc., are California corporations that provide dump trucks to move various construction materials in both intrastate and interstate commerce.

Collectively, plaintiffs brought this action against several individuals and the state agencies they represent. Defendant Roberta E. Mendonca is Director of the California Division of Labor Standards Enforcement,[2] defendant Lloyd Aubry, Jr. is Director of the California Department of Industrial Relations and defendant James W. Van Loben Sels is Director of the California Department of Transportation. Under the authority of their respective agencies, defendants regulate wages on public works projects in the State of California.

Plaintiffs provide, among other things, motor carrier services to publicly-funded projects in the state and calculate their rates for such services based on: (1) costs, including cost of labor, permits, insurance, tax and license; (2) performance factors; and (3) conditions, including prevailing wage requirements.

Two statutes are involved in this action: (1) California's prevailing wage law, Labor Code §§ 1770-80 ("Prevailing Wage Law"); and (2) 49 U.S.C. § 14501 ("section 14501"). Enacted in 1937, the Prevailing Wage Law requires payment of a general prevailing wage based on wages in the "locality" for various "crafts" to persons performing public works contracts and the disclosure of certified employee payroll records to ensure compliance. See Cal. Labor Code §§ 1770, 1776. Enacted in the Federal Aviation Administration Authorization Act of 1994 ("FAAA Act"), Section 14501 establishes preemption of state economic regulation "related to a price, route, or service" of motor carriers. FAAA Act, Pub.L. No. 103–305, § 601(c), 108 Stat. 1569 (1994) (currently codified at 49 U.S.C. § 14501(c)).[3]

Defendants have notified plaintiffs that they are subject to various penalties for failing to pay prevailing wages and provide payroll records as required by the Prevailing Wage Law. Plaintiffs contend that enforcement of the Prevailing Wage Law will result in irreparable harm because compliance requires them to increase their rates by 25% for transportation services provided from non-commercial sources to public works projects, and from public works projects to other public and private sites ("disputed transportation").[4]

Plaintiffs filed this action on September 20, 1996, claiming that enforcement of the Prevailing Wage Law with respect to the disputed transportation is unconstitutional in two ways: (1) the Prevailing Wage Law constitutes an impermissible burden on interstate commerce; and (2) enforcement of the Prevailing Wage Law violates the supremacy clause because it is preempted by section 14501. Defendants filed the instant motion to dismiss on October 18, 1996.

---

1. All facts are taken from plaintiffs' complaint unless otherwise indicated.

2. In their complaint, plaintiffs incorrectly identified Roberta Mendonca as Commissioner of the California Department of Labor. The proper identification is Director of the California Division of Labor Standards Enforcement.

3. Section 14501 has a confusing history: the FAAA Act placed this preemption clause at 49 U.S.C. § 11501, but this section was repealed by the Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104–88, 107 Stat. 803 (1995) ("ICC Act"). The ICC Act recodified the preemption provision in section 11501 as new section 14501. The language is identical and clearly reaffirms Congress' intent to preempt state laws relating to the prices of motor carriers. See Carsten v. United Parcel Service, Inc., 1996 WL 335421, *4, 1996 U.S. Dist. Lexis 5798, *13–*14 (E.D.Cal.1996) (discussing this legislative history).

4. Plaintiffs do not dispute enforcement of the prevailing wage law to services provided wholly within the physical limits of public works projects, or from commercial sources to public works projects.

**1124**

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied sub. nom. Wyoming Community Dev. Auth. v. Durning*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). Each ground for dismissal will be considered in turn.

## DISCUSSION

▉ Plaintiffs contend that enforcement of the Prevailing Wage Law with respect to the disputed transportation is unconstitutional on two grounds: (1) such regulation is preempted by 49 U.S.C. § 14501(c) and therefore violates the supremacy clause; and (2) such regulations place an unconstitutional burden on interstate commerce under the commerce clause. Defendants have moved to dismiss on both grounds.[5]

### I. *Preemption*

Plaintiffs argue that 49 U.S.C. § 14501 preempts the Prevailing Wage Law because its enforcement has a direct effect on the price of the services they provide. Specifi-

cally, plaintiffs ask the court to declare the Prevailing Wage Law preempted by section 14501 and to enjoin its enforcement with respect to the disputed transportation. In response, defendants argue that the Prevailing Wage Law is not preempted by section 14501 because its provisions only indirectly affect plaintiffs' rates and prices and its legislative history does not support preemption of general wage regulation traditionally governed by state law.

▉ Under the supremacy clause, federal law may preempt state law either by express provision, by implication, or by a conflict between federal and state law. *N.Y. Conference of Blue Cross v. Travelers Ins.*, 514 U.S. 645, ——, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995) (citations omitted). An analysis of whether a state law is preempted begins with "the starting presumption that Congress does not intend to supplant state law." *Id.* It is "never assumed lightly, that Congress has derogated state regulation." *Id.* at ——, 115 S.Ct. at 1677. When addressing preemption claims, "the question whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (citations omitted) Furthermore, "where federal law is said to bar state action in fields of traditional state regulation," it is assumed that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Blue Cross*, —— U.S. at ——, 115 S.Ct. at 1676 (citations omitted); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

▉ California's Prevailing Wage Law encompasses two areas of law traditionally regulated by states.[6] Defendants are correct in

---

**5.** Although defendants originally argued that plaintiffs' complaint should be dismissed on both preemption and interstate commerce grounds, the latter argument fades over the course of the motions, and has virtually disappeared in defendants' reply brief. Similarly, the amicus brief submitted by the International Brotherhood of

Teamsters does not even mention the interstate commerce argument. Accordingly, the court does not resolve this issue at this time.

**6.** The parties dispute whether the Prevailing Wage Law should be considered a "minimum wage law" or an economic regulation akin to

stating that the regulation of wages is a subject of traditional state concern. *See WSB Elec., Inc. v. Curry,* 88 F.3d 788 (9th Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3400 (1996) (explaining that this fact is "well settled"). The regulation of public works has also been recognized as an area of state concern. *See Atkin v. Kansas,* 191 U.S. 207, 222–23, 24 S.Ct. 124, 127, 48 L.Ed. 148 (1903) (stating that "it belongs to the state, as the guardian and trustee for its people ... to prescribe the conditions on which it will permit public work to be done on its behalf, or on behalf of its municipalities.").

Defendants argue that because the Prevailing Wage Law involves these areas of law, it cannot be preempted by section 14501.[7] This is a bit conclusory. To determine if section 14501 preempts California's Prevailing Wage Law, the court must first analyze the text of the federal provision, then determine congressional intent as expressed in the statute's legislative history. *See Blue Cross,* 514 U.S. at ——, 115 S.Ct. at 1677 (statutory construction "begins ... with the text of the provision in question, [then], as need be, to the structure and purpose of the Act in which it occurs").

### A. *Interpreting Congressional Intent*

Defendants argue that the Prevailing Wage Law is not preempted because (1) neither the plain language of section 14501 nor its legislative history support plaintiffs' contention that the Prevailing Wage Law is the type of law intended to be preempted by the statute; and (2) the Prevailing Wage Law is not sufficiently "related to" the prices and rates of plaintiffs' motor carrier services

to require preemption. Plaintiffs read the legislative history of section 14501 in a different light, arguing that (1) the use of the phrase "related to" and the legislative history of section 14501 indicate that Congress intended the statute to have broad preemptive effect; and (2) the Prevailing Wage Law has a direct effect on their rates of service and therefore is sufficiently "related to" section 14501 to require preemption.

> 49 U.S.C. § 14501 states in relevant part: a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). This language does not, on its face, encompass state regulation of wages such as the Prevailing Wage Law. Because it is not entirely clear that regulation of wages is "related to" motor carriers' prices, routes, or services, the court must next consider the legislative history of section 14501 to determine if it was Congress's "clear and manifest" intent that the Prevailing Wage Law be preempted. In determining intent, the regulation of labor on state-funded construction projects is deemed within the state's traditional police power which courts must presume Congress did not intend to preempt. *See Minnesota Chapter of Assoc. Builders v. Minnesota Dept. of Labor,* 47 F.3d 975, 979 (8th Cir.1995) (citing *Metro-*

---

price control that interferes with market forces. It appears the argument bears on whether the Prevailing Wage Law should be considered the type of regulation that is the "subject of traditional state concern." Amicus counsel aptly notes, and the court agrees, that this battle is a purely semantic one, because "minimum and other wage laws" fall within states' "broad authority under their police powers to regulate the employment relationship...." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985) (emphasis added).

**7.** Defendants also argue that because the Prevailing Wage Law only applies to those employed in

public works projects for the state, the Prevailing Wage Law is an exercise of the state's "proprietary" power, not an exercise of its "regulatory" powers. As a result, defendants claim that the Prevailing Wage Law does not "regulate" the prices, routes, or services of motor carriers and is therefore not preempted by section 14501. In response, plaintiffs provide recent cases where courts have characterized prevailing wage laws as regulatory in nature. Amicus counsel urge the court to disregard this line of argument because it has not been fully briefed by either party. The court agrees with amicus counsel and does not consider this argument in determining whether the Prevailing Wage Law is preempted.

*politan Life*, 471 U.S. at 740, 105 S.Ct. at 2389).

Plaintiff is correct in stating that Congress intended the preemption provision in section 14501 to be interpreted in the same manner as the preemption clause of the Airline Deregulation Act ("ADA") discussed in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). H.R. Conf. Rep. No. 677, 103d Cong., 2d Sess. 85 (1994), U.S.Code Cong. & Admin.News 1994, pp. 1676, 1757 (preemption provision concerning motor carriers "is identical to the preemption provision deregulating air carriers ... and is intended to function in the exact same manner with respect to its preemptive effects."). In *Morales*, the Supreme Court found that the ADA preempted state enforcement of consumer protection laws governing the advertisement of airline fares, finding that the state laws unavoidably "relate[d] to" airline rates. *Morales*, 504 U.S. at 388, 112 S.Ct. at 2039. Plaintiffs contend that *Morales* provides an extremely broad interpretation of the phrase "relating to" that justifies giving broad preemptive effect to section 14501. In response, defendants argue that the scope of preemption in both the ADA and section 14501 is limited, and neither statute specifically refers to preemption of wage laws.

The scope of preemption under section 14501 has been specifically limited by Congress.[8] For example, in enacting the section, Congress stated that only "certain aspects of the State regulatory process should be preempted." FAAA Act § 601(a)(2). In addition, section 14501 itself provides various exceptions for state regulation of insurance, safety concerns, and other areas of state law. *See* 49 U.S.C. § 14501(c)(2)–(3). The statute's legislative history also undercuts plaintiffs' broad reading of the preemption clause; when discussing the background and purpose for enacting the section, Congress noted that:

[c]urrently, 41 jurisdictions regulate, in varying degrees, intrastate prices, routes and services of motor carriers.... Typical forms of regulation include entry controls, tariff filing and price regulation, and types of commodities carried .... The sheer diversity of [state] regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business. In hearings held on this issue, numerous examples have been cited in which rates for shipments within a state exceed rates for comparable distances across state lines.

H.R. Conf. Rep. at 86, 87, 1994 U.S.Code Cong. & Admin.News, at 1758, 1759. Defendants argue that had Congress intended to preempt state wage regulation, they would have done so in the conference report. Whether or not this is true, the legislative history of section 14501 does not establish that it was Congress's "clear and manifest" intent to preempt state wage regulation; rather, it appears that Congress intended to preempt state law that more directly affects motor carrier prices and rates, such as entry controls, tariffs charged for transportation services and similar regulation.[9] In discussing state regulatory practices, the legislation speaks to regulatory schemes typically reserved to state transportation or commercial agencies, not regulations that generally govern many employers, including motor carriers.

Furthermore, the legislative history discloses another reason behind Congress's enactment of this section: the unequal treatment of common carriers organized as motor carriers and those organized as air carriers arising from the 9th Circuit's decision in *Federal Express Corp. v. California Public Utilities Comm'n*, 936 F.2d 1075 (9th Cir. 1991), *cert. denied*, 504 U.S. 979, 112 S.Ct.

---

8. Section 14501 provides several exceptions that permit continued state regulation of certain standard transportation practices (such as bills of lading and cargo credit rules), as well as certain safety and insurance regulations. *See* 49 U.S.C. § 14905(c)(2)–(3). Because none of these exceptions directly applies to the issues in this action and the parties have not raised their applicabili-

ty, it is not necessary for the court to discuss them.

9. Plaintiffs argue that the Prevailing Wage Law is a form of entry and price control imposed on motor carriers. Plaintiffs fail to explain this somewhat strained analogy; accordingly, the court does not address this argument.

2956, 119 L.Ed.2d 578 (1992).[10] Defendants correctly point out that in *Federal Express,* the state economic regulation preempted by the ADA was clearly related to price. *See Federal Express,* 936 F.2d at 1078 (discussing the PUC's regulation of rates, discounts and promotional pricing, and other fees "obviously" preempted by the ADA). Defendants argue that, in contrast, the connection between section 14501 and the Prevailing Wage Law is too tenuous to trigger preemption.

## B. *The Scope of Section 14501's "Related To" Provision*

A finding of preemption under section 14501 also turns on whether the Prevailing Wage Law is sufficiently "related to" plaintiffs' prices, routes and services. Defendants argue that the Prevailing Wage Law has only indirect effects on the prices that plaintiffs charge for their services and that therefore it is not adequately "related to" the prices, routes, or services of motor carriers so as to trigger preemption under section 14501. In response, plaintiffs contend that the Prevailing Wage Law directly affects the prices they charge for services and is therefore "related to" price, route, and service under section 14501. Plaintiffs claim that the Pre-

vailing Wage Law increases wage costs by '75%, which in turn increases prices by 25%; due to this increase in price, plaintiffs argue that the Prevailing Wage Law subjects them to forfeiture of all or part of their contract price, alters their price structure to absorb additional cost, forces them to use independent owner-operators instead of employees to avoid the Prevailing Wage Law's effects, requires them to redirect and reroute equipment to compensate for the additional costs imposed on them by the Prevailing Wage Law, and interferes with their California segment of operations, which in turn disrupts their interstate services.[11]

The meaning of the phrase "relate to" has been interpreted by the U.S. Supreme Court in the preemption clauses of ERISA [12] and the ADA.[13] *Blue Cross,* 514 U.S. at ——— ———, 115 S.Ct. at 1676–80 (discussing the meaning of "relate to" in the context of ERISA); *Morales,* 504 U.S. at 383–92, 112 S.Ct. at 2036–41 (interpreting the meaning of "relating to" in the preemption clause of the ADA).[14] State laws having a "connection with or reference to" the object of the federal statute have been deemed preempted. *See Blue Cross,* 514 U.S. at ———, 115 S.Ct. at 1677; *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037. It is true that ADA and ERISA pre-

---

10. In this case, the 9th Circuit ruled that intrastate economic regulations for motor carriers did not apply to Federal Express because such regulations were preempted by the Airline Deregulation Act of 1978. 936 F.2d at 1078.

11. During oral argument, plaintiffs implied that preemption under section 14501 should be governed, in part, by the percentage of price comprised of wages. At the hearing, plaintiffs stated that wages constituted 33% of the eventual price charged by motor carriers, while insurance and fuel represented 4% and 8%, respectively. Plaintiffs argued that because wages constituted one-third of price, the prevailing wage law "relates to" price and is therefore preempted. The court is not willing to step down plaintiffs' slippery slope. As discussed during oral argument, if preemption was based on percentages of price, then numerous areas of state regulation would be preempted based solely on their percentage effect on motor carrier prices. Finding preemption on the basis of percentages would ignore the legislative history of section 14501 and disregard the Supreme Court's requirement of "clear and manifest" Congressional intent to preempt.

12. ERISA's preemption clause provides that "all state laws insofar as they . . . relate to any em-

ployee benefit plan" are preempted by ERISA. 29 U.S.C. § 1144(a).

13. The Airline Deregulation Act includes a preemption provision prohibiting States from enforcing any law "relating to rates, routes or services" of any air carrier. 49 U.S.C. § 41713(b)(1).

14. The parties dispute whether ERISA cases may be used as precedent in this action. While it is true that Congress intended section 14501 to provide the same preemptive effect as the ADA, it is not necessary to exclude ERISA cases in construing section 14501's preemption clause. Defendants correctly note that the Court has adopted the same standard for both ERISA and the ADA where the interpretation of the phrase "relate/relating to" is concerned. *See Morales,* 504 U.S. at 384, 112 S.Ct. at 2037 ("'[s]ince the relevant language of the ADA is identical [to ERISA's preemption clause], we think it appropriate to adopt the same standard here"). Therefore it is appropriate to use both ADA and ERISA cases in determining the scope of the "related to" provision in section 14501.

emption clauses have been broadly interpreted. *See, e.g., Harris v. American Airlines, Inc.*, 55 F.3d 1472, 1474 (9th Cir.1995) (ADA's "related to" provision has "an expansive reach" that preempts state law, finding that in-flight conduct was sufficiently "related to" airline's services to require preemption of state law). Nevertheless, the Court recently cautioned against construing the phrase too broadly:

> [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "really, universally, relations stop nowhere" [citation omitted]. But that, of course, would be to read Congress's words of limitation against pre-emption out of the law whenever Congress speaks to the matter with generality.

*Blue Cross*, 514 U.S. at ——, 115 S.Ct. at 1677. Furthermore, "some state action may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have preemptive effect. *Morales*, 504 U.S. at 390, 112 S.Ct. at 2040 (interpreting the ADA).

Both parties discuss ERISA cases illustrating that prevailing wage laws in several states, including California, are not preempted by ERISA. *See WSB Elec.*, 88 F.3d at 796 (finding that California's prevailing wage law did not sufficiently "relate to" ERISA plans to trigger preemption); *Minnesota Chapter of Assoc. Builders*, 47 F.3d at 979 (finding that "the incidental impact" on ERISA plans worked by the prevailing wage law was too remote to require preemption); *Keystone Chapter, Assoc. Builders and Contractors, Inc. v. Foley*, 37 F.3d 945, 956 (3rd Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (finding Pennsylvania's prevailing wage law was not preempted because it had only "incidental and insignificant relations" to ERISA plans).

Additionally, the parties dispute the significance of a different line of ERISA cases involving preemption of state apprenticeship programs. *See Dillingham Construction N.A., Inc. v. County of Sonoma*, 57 F.3d 712, 718–19 (9th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996) (requiring payment of prevailing wages under California's prevailing wage law to employees in certain apprenticeship programs sufficiently "relates to" ERISA to require preemption); *Hydrostorage v. Northern Cal. Boilermakers*, 891 F.2d 719, 729–30 (9th Cir. 1989), *cert. denied*, 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990) (finding that state order requiring employer to participate in a state apprenticeship program "related to" employee benefit plan under ERISA). As defendants correctly point out, this unique line of cases is distinguishable from the present case because apprenticeship programs have been interpreted to fall within ERISA's definition of "employee welfare benefit plans," therefore presenting a clearer case in favor of preemption. *See Dillingham*, 57 F.3d at 718. Although the payment of prevailing wages *in apprenticeship programs* has been preempted by ERISA, the payment of prevailing wages *outside of apprenticeship programs* has never been determined to fall within ERISA's preemptive scope.

Turning to ADA cases, courts have broadly interpreted the ADA's preemption clause, finding state statutory and tort claims against air carriers preempted. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 226–30, 115 S.Ct. 817, 823–24, 130 L.Ed.2d 715 (1995) (state consumer fraud provision involving frequent flyer miles programs preempted); *Morales*, 504 U.S. at 391, 112 S.Ct. at 2041 (state consumer fraud law regulating airline rates advertising preempted by ADA); *Harris*, 55 F.3d at 1476–77 (Oregon Public Accommodations Law preempted where in-flight crew's behavior found to "relate to" services). However, the scope of ADA preemption has been limited in some areas of state regulation. *See Wolens*, 513 U.S. at 232–35, 115 S.Ct. at 826–27 (although consumer fraud claims preempted, breach of contract claims not preempted by ADA). This has been the case where the state law was insufficiently related to the rates, routes or services of air carriers. *See Anderson v. American Airlines*, 2 F.3d 590, 597–98 (5th Cir.1993) (state claim against employer for retaliation had "too remote" an effect on air carrier service to trigger ADA preemption) These cases suggest that there are limits on the preemptive scope of both the ADA and section 14501 where the state regulation and

claims made under it only indirectly affect motor carriers' prices, routes and services.

The Prevailing Wage Law can be distinguished from the types of state laws found to be preempted by the ADA:[15] (1) preemption has been found in the context of state tort regulation where the tortious conduct directly involved rates or services; and (2) the state statutes have been deemed preempted where they either made reference to or more directly related to the rates of air carriers. In the case at bar, the relationship between section 14501 and the Prevailing Wage Law appears to be far more attenuated.

Of the few cases discussing section 14501, none involve state wage laws; preemption has been found only in areas of state regulation that make reference to or are clearly related to motor carrier rates, routes or services. *See Harris County Wrecker Owners for Equal Opportunity v. City of Houston,* 943 F.Supp. 711, 724–725, 732 (S.D.Tex.1996) (finding that local regulations limiting the areas where tow trucks could operate were sufficiently related to section 14501 to be preempted, but holding them to be exempt from preemption as permissible state safety regulations); *Carsten v. United Parcel Service, Inc.,* 1996 WL 335421, 1996 U.S. Dist. Lexis 5798 (E.D.Cal.1996) (section 14501 preempts California law prohibiting preferential pricing by common carriers).

In light of the cases interpreting the meaning of "related to," it remains unclear whether the Prevailing Wage Law is sufficiently related to plaintiffs' prices to "trigger" section 14501 preemption. *Anderson,* 2 F.3d at 597 (state law claim's effect on services "far too remote to trigger pre-emption"). However, in light of the presumption against preemption in this area of traditional state concern, the court is not convinced that the Prevailing Wage Law adequately "relates to" the prices of plaintiffs' services in the way that Congress intended, thereby triggering preemption.

Although plaintiffs contend that the Prevailing Wage Law "directly impacts" the prices they charge their customers for their services, they list a rather lengthy chain of events describing how the Prevailing Wage Law increases wages, which increases their costs, which in turn, increases their prices, therefore requiring preemption under section 14501. Admittedly, any state regulation of the employer-employee relationship will have at least some effect on the operating costs of a business, which in turn affects the rates and prices charged. After all, "[a]ny wage regulation has the potential to increase costs to the employer." *Minnesota Chapter of Assoc. Builders,* 47 F.3d at 979. However, in this case, the Prevailing Wage Law's effect, as identified by plaintiffs, appears "too tenuous, remote, or peripheral" to trigger preemption. *Morales,* 504 U.S. at 389–90, 112 S.Ct. at 2040.

Moreover, both the legislative history and the language of section 14501 suggests Congress did not intend to preempt all state laws that raise the operation costs of motor carrier businesses. For example, state regulation of insurance and safety requirements undoubtedly affects the rates and prices charged by motor carriers, but is not preempted by section 14501. In addition, Congress sought to prevent de facto state regulation of motor carrier prices, routes and services by enacting section 14501. H.R. Conf. Rep. at 84. As defendants point out, because the Prevailing Wage Law applies to *all* employers involved in public works, the fifty year-old Prevailing Wage Law cannot be construed as the state's de facto attempt to regulate motor carriers as prohibited by section 14501.

Preemption of the Prevailing Wage Law is unsupported by the legislative history of section 14501 and the tenuous connection between the Prevailing Wage Law and motor carrier's prices, routes and services. During

---

15. During oral argument, plaintiffs were unable to name any cases where the ADA preempted wage laws specifically. Instead, plaintiffs referred the court to two district court cases that were not cited in their opposition motion: *Marlow v. AMR Services Corp.,* 870 F.Supp. 295 (D.Hawai'i 1994) (jetbridge maintenance employee's claim under whistleblower statute preempt-ed by ADA where he alleged he was fired for raising safety concerns) and *Abdu–Brisson v. Delta Air Lines, Inc.,* 927 F.Supp. 109 (S.D.N.Y. 1996) (pilots' age discrimination claim preempted by ADA). These cases are clearly distinguishable from the present case because neither involve the preemption of a generally applicable wage law.

**1130**

oral argument, plaintiffs urged the court find preemption in an area of state law Congress did not clearly intend to preempt. The court agrees with defendants that plaintiffs' interpretation of section 14501's knows no bounds, and leads the court down a dangerously slippery slope. Permitting preemption in this case would overextend the meaning of the "relate to" language of section 14501, while expanding the scope of preemption to areas of traditional state control where Congress has not expressed its "clear and manifest" intent to preempt.

## II. *Interstate Commerce*

Because neither the parties nor amicus curiae have adequately briefed this issue, the court does not reach the interstate commerce claim raised in plaintiffs' complaint and briefly mentioned in defendants' motion to dismiss.

## *CONCLUSION*

This court finds that 49 U.S.C. § 14501 does not preempt California's prevailing wage law, Labor Code §§ 1770–80. For the foregoing reasons, IT IS HEREBY ORDERED that defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART without prejudice. Defendants' motion is GRANTED on supremacy clause grounds, and DENIED without prejudice on commerce clause grounds.

IT IS SO ORDERED.