## PARK NATIONAL BANK OF HOUSTON, Plaintiff,

v.

## Dov Avni KAMINETZKY, Howard Weiss, et al., Defendants.

### Civil Action No. H–96–0495.

United States District Court, S.D. Texas, Houston Division.

Sept. 12, 1996.

---

John Wesley Wauson, Wauson & Associates, Houston, TX, for Park Nat. Bank of Houston.

Dov Avni Kaminetzky, Houston, TX, pro se.

Michael C. Whalen, Houston, TX, for Howard Weiss.

Stephen Gregory Hunt, Houston, TX, and Michael C. Whalen, Houston, TX, for Choice Acquisitions No One, Inc. and Choice Acquisitions No Five, Inc.

### MEMORANDUM AND ORDER GRANTING SANCTIONS, COSTS, AND FEES

ATLAS, District Judge.

### I. INTRODUCTION

This action was removed to this Court on February 13, 1996, ostensibly by Defendant Howard Weiss ("Weiss"), with the agreement of Co-Defendant Dov Avni Kaminetzky ("Kaminetzky"). Upon Motions to Remand filed by Plaintiff Park National Bank of Houston ("Park National Bank") [Doc. # 2A] and Co-Defendants, Choice Acquisition No. One, Inc. ("CA1") and Choice Acquisition No. Five, Inc. ("CA5") [Doc. # 5], the case was remanded to the 333rd District Court of Harris County, Texas on February 15, 1996. See Doc. # 6.

■ Because legal grounds for removal were patently lacking[1] and removal of this action appeared to violate a prior Order precluding such filings, see Kaminetzky v. Frost National Bank, 881 F.Supp. 276 (S.D.Tex. 1995) (Hittner, J.) ("Preclusion Order"), the Court on February 21, 1996, ordered the parties to show cause why sanctions, costs, expenses, and attorney's fees should not be imposed against Weiss, Kaminetzky, and/or their attorney, Michael Whalen ("Whalen").[2] See Doc. # 7. The parties responded to the Order to Show Cause. See Choice Acquisition No. One, Inc. and Choice Acquisition No. Five, Inc.'s Supplement to Motion to Remand [Doc. # 12];[3] Response of Park National Bank [Doc. # 13];[4] Response of Defendants Kaminetzky and Weiss [Doc. # 14].

This Court had concerns about Kaminetzky, Weiss and Whalen's good faith because this lawsuit previously was removed to this Court by these parties (Civil Action No. 94–2977), and was remanded to state court by the Honorable Ewing Werlein, Jr. on September 22, 1994. Furthermore, another similar suit, which was twice removed by Kaminetzky, Weiss and Whalen to this Court from state court (Civil Action Nos. 94–2314 and 94–4403), was remanded on the same grounds as those cited by this Court.

The sanctions hearing in the case at bar was held on March 14, 1996. Kaminetzky and Whalen, plus counsel for Park National Bank, John Wesley Wauson, and counsel for CA1 and CA5, Stephen Gregory Hunt, ap-

---

1. The remand was ordered because the grounds alleged for removal—that documents recently disclosed by Plaintiff raised a federal claim—were unfounded. The Court held that the removal essentially was based on Defendants' intention to assert a defense involving federal claims. Order of Remand [Doc. # 6].

2. Although this Court does not have jurisdiction over the merits of the remanded action, the Court retained jurisdiction to impose sanctions, costs, and fees. Fed.R.Civ.P. 11(c)(2)(B); *Willy v. Coastal Corp.*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (9–0) (upholding award of Rule 11 sanctions by Judge David Hittner); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96, 110 S.Ct. 2447, 2454–56, 110 L.Ed.2d 359 (1990).

3. Defendants CA1 and CA5 have requested costs, expenses, and attorney's fees in the amount of $6,181. See Doc. # 12. CA1 and CA5's original motion for sanctions requested $5,000 in sanctions against Kaminetzky, Weiss and Whalen

jointly and severally. See Doc. # 5. There is a dispute as to who controls these entities and whether their counsel of record, Stephen G. Hunt, is an authorized counsel. Sanctions Hearing, Mar. 14, 1996. See also Transcript of Hearing on Remand before Judge E. Werlein, Jr., Sept. 22, 1994, at 7, 19–20 [Doc. # 12].

4. Park National Bank has requested the following: (1) reasonable costs, including attorney's fees, in the sum of $5751.70 plus an additional $10,000 in attorney's fees conditioned upon appeal, jointly and severally against Kaminetzky, Weiss, and Whalen, pursuant to 28 U.S.C. §§ 1927 and 1447(c); (2) sanctions in the amount of $9,598.69 jointly and severally against Kaminetzky, Weiss, and Whalen, pursuant to Rule 11 and the inherent power of this Court; (3) additional sanctions of $75,000 jointly and severally by Kaminetzky, Weiss, and Whalen pursuant to Rule 11 and this Court's inherent powers; and (4) further order of the Court allowing deposit of these proceeds in the registry of the Court. See Doc. # 13.

peared.[5] For the reasons set forth below, sanctions for improper removal are amply warranted. The Court further concludes that Kaminetzky, with the assistance of Weiss and their joint counsel, Whalen, has attempted to evade Judge Hittner's Preclusion Order by removing this case from state court and by listing Weiss as the lead removing party in their removal papers and on the civil cover sheet.

The Court's findings as to the motivations for and implications of Kaminetzky's, Weiss' and Whalen's conduct in this case can be understood only by a review of their prior litigation history in this District (Part II), their conduct in this case specifically (Parts III and IV), and their stated rationales for removal of this case in February 1996 (Parts V). The Court's legal analysis and specific findings on sanctions are set forth in Parts VI and VII of this Order.

## II. Kaminetzky, WEISS AND WHALEN'S HISTORY OF LITIGATION IN THIS COURT

Kaminetzky, Weiss and Whalen have an extensive history of litigation in this Court. It is a classic example of abuse of the Court and of the litigation process. The suits in which they were (or are) involved are:

- *Cullen Center Bank v. Investment Choices Corp., Kaminetzky and Weiss* (hereinafter "*Cullen Center Bank* ").
  - Cause No. 92–055449, 129th Judicial District Court of Harris County.
  - Removed to federal court on July 6, 1994 (Civil Action No. 94–2314, Southern District of Texas (Rainey, J.)).
  - Second removal to federal court on September 7, 1995 (Civil Action No. 95–4403, Southern District of Texas (Hittner, J.)).
- *Charles Nissan, et al. v. Kaminetzky and Weiss* (hereinafter "*Nissan* ").
  - Cause No. 91–16901–A, 333rd Judicial District Court of Harris County.
  - Removed to federal court on August 25, 1994 (Civil Action No. 94–2950, Southern District of Texas (Hughes, J.)).
- *Park National Bank of Houston v. Kaminetzky and Weiss* (hereinafter "*Park National I*").
  - Cause No. 91–16901, 333d Judicial District Court of Harris County.
  - Removed to federal court on August 26, 1994 (Civil Action No. 94–2977, Southern District of Texas (Werlein, J.)).
  - Second removal to federal court on February 13, 1996 (Civil Action 96–495, Southern District of Texas (Atlas, J.)).
- *Kaminetzky v. Park National Bank et al.* (hereinafter "*Park National II*").
  - Original complaint filed *pro se* in federal court on September 2, 1994 (Civil Action No. 94–3055, Southern District of Texas (Hittner, J.)).
- *Kaminetzky et al. v. Frost National Bank of Houston, et al.* (hereinafter "*Frost National Bank*").
  - Original complaint filed *pro se* in federal court on December 13, 1994 (Civil Action No. 94–4207, Southern District of Texas (Hittner, J.)).

Copies of the docket sheets, each dispositive written Court Order, and the available pertinent hearing transcripts on those motions are included in an Appendix being filed with this Order. The following is a summary of these actions and their resolution in federal court.

### Cullen Center Bank

On July 6, 1994, Kaminetzky, Weiss and their corporation, Investment Choices Corporation ("ICC"), with Whalen as their counsel, removed *Cullen Center Bank v. Investment Choices Corporation, Kaminetzky and Weiss,* Cause No. 92–055449, from the 129th Judicial District Court of Harris County to this Court, where it was assigned to the Honorable John D. Rainey as Civil Action No. 94–2314. Cullen Center Bank originally filed the action to recover damages from ICC and the individual guarantors, Kaminetzky

---

5.  Hunt's authority to represent CA1 and CA5 has been challenged by Kaminetzky and Weiss. *See* *infra* at 7 and footnote 27.

and Weiss, for past due rents stemming from a lease. On June 8, 1994, approximately one month prior to removal, the Honorable Gregg Abbott, then Judge of the 129th Judicial District Court, had granted partial summary judgment against these three Defendants, addressing all issues except attorney's fees.

ICC filed bankruptcy the same day the state court's summary judgment was announced.[6] According to the Court's docket sheet, this bankruptcy allegedly served as the basis for removal on July 6, 1994. Cullen Center Bank obtained an order lifting the automatic stay on August 31, 1994, and then moved to remand the case to state court. ICC, Kaminetzky and Weiss (all represented by Whalen) contended that removal was proper because it *intended* to file a counterclaim against Plaintiff that would raise a federal question under 18 U.S.C. §§ 1961 *et seq.* and 18 U.S.C. § 1005. Judge Rainey issued an Order on January 18, 1995, remanding this action to state court, holding that equity mandated remand of this dispute despite the pendency of ICC's bankruptcy. Civil Action No. 94–2314, Order [Doc. # 9], at 1–2; 28 U.S.C. § 1452(b). As to Defendants' argument that ICC intended to assert a counterclaim under the Racketeering Influenced Corrupt Organizations Act ("RICO"), Judge Rainey stated:

> Under Section 1331, the claim *of the plaintiff* must "arise under" federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) (emphasis added). In other words, if a question of federal law does not appear on the face of the plaintiff's complaint, federal question jurisdiction does not exist and removal

is improper. *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 593 (5th Cir.1993). Such a claim of federal question jurisdiction must be resolved solely on the basis of the allegations within the complaint itself. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. at 9–10, 103 S.Ct. at 2847.... It is clear that the Supreme Court views the removal statute as providing limited access to federal court. *Id.,* 463 U.S. at 9–10, 103 S.Ct. at 2846.

> A case may not be removed on the basis of a counterclaim by the defendant, even if it raises a federal question and both parties admit it is the only question truly at issue. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. at 9–12, 103 S.Ct. at 2846–48. "Although such allegations show that ... in the course of the litigation, a question under the constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the constitution." *Id.,* 463 U.S. at 10, 103 S.Ct. at 2847 (citations omitted).

Order, at 2–3 (emphasis in original).

Thus, Judge Rainey informed Whalen and his clients, Kaminetzky and Weiss, of the relevant black letter law: No removal is permitted on the basis of a counterclaim or defense allegedly raising questions of federal law.

### Nissan

The next action involving Kaminetzky and Weiss in this Court was *Charles Nissan, et al. v. Kaminetzky and Weiss,* Civil Action No. 94–2950, an action removed from the 333rd Judicial District Court of Harris County, Texas (Cause No. 91–16901–A).[7] This

---

**6.** ICC's bankruptcy case was filed as Bankruptcy Case No. 94–43795. Whalen served as counsel for debtor, ICC. The case was initially filed as a Chapter 11, but was converted upon motion of the debtor to Chapter 7. *See* Bankruptcy Doc. # 5. During the pendency of the case, Kaminetzky and Weiss tried to use the court process for their personal benefit; they, as purported creditors of the debtor, noticed depositions of individuals and entities, including Park National Bank, Cullen Center Bank, Frost Bank and their respective counsel. These notices of deposition were limited by the Court as to Cullen Center Bank to matters specifically relating to the debt-

or's obligation and nonpayment on the underlying mortgage and attorneys' fees. *See* Bankruptcy Doc. # 51. Frost Bank and Park National Bank and the latter's counsel, John Wesley Wauson, similarly moved to quash the notices of deposition and request for documents. The status of this discovery is unclear as of the date of this opinion.

**7.** The original complaint filed as Case No. 91–016901 in state court was *Charles Nissan, et al. v. Park National Bank, et al.* The disputes among Nissan and other individuals, CA1 and CA5, and Kaminetzky and Weiss, were severed from this

case was removed on August 25, 1994, by Kaminetzky and Weiss purportedly on the grounds it was related to a pending bankruptcy case. Defendants referred to Kaminetzky's own bankruptcy, which was filed by Whalen that same day, on August 25, 1994, as Bankruptcy Case No. 94–45761. The Bankruptcy Court's docket sheet reflects that Kaminetzky failed to file virtually any of the necessary documents: the disclosure of attorney compensation, statement of financial affairs, schedules A–J, and statement regarding secured property. The Bankruptcy Court ordered the missing materials to be filed on or before September 9, 1994.

Shortly thereafter, on September 30, 1994, because Kaminetzky did not file the required documents in his bankruptcy case, that case was dismissed.

In *Nissan,* two of the Plaintiffs, CA1 and CA5, filed motions to dismiss and to remand the action to state court. Meanwhile, Whalen, apparently at the behest of Kaminetzky and Weiss, filed Voluntary Petitions in Bankruptcy on September 2, 1994, for CA1 (Bankruptcy Case No. 94–46087), and for CA5 (Bankruptcy Case No. 94–46088). Kaminetzky and Weiss purported to control CA1 and CA5, over the objections of Charles Nissan and other plaintiffs, who apparently were the controlling shareholders previously and have continued to claim control.[8] The *Nissan* case was remanded to state court by the Honorable Lynn Hughes on February 4, 1995.

### Park National I

*Park National Bank of Houston v. Kaminetzky and Weiss,* Civil Action No. 94–2977 (Cause No. 91–16901, from the 333rd Judicial District Harris County) was removed to this Court on August 26, 1994, by Kaminetzky and Weiss, who were represented by Whalen. The removal purportedly was based on Kam-

inetzky's bankruptcy, which had been filed the previous day. On September 22, 1994, Judge Ewing Werlein, Jr., after a hearing, granted Park National Bank's Motion for Remand on the ground that the equities did not support removal on the eve of trial of a four-year-old case with an extensive state court history. Transcript of Remand Hearing, Sept. 22, 1994, at 17–18. The Court also focussed on the fact that a liability judgment had already been entered against Defendants by the state court, and the only issues remaining were damages and attorney's fees. *Id.* at 22.

### Park National II

On September 2, 1994, the same day that CA1 and CA5's bankruptcy cases were filed, Kaminetzky, acting *pro se,* filed suit against Park National Bank and 19 other defendants. *Kaminetzky v. Park National Bank, et al.,* Civil Action No. 94–3055. This case was assigned to the Honorable David Hittner. Kaminetzky alleged that Park National Bank was a "racketeer" and a conspirator and challenged the handling of a loan pertaining to Kaminetzky's car wash business, apparently the same business and loan that gave rise to *Park National II.* Kaminetzky sought monetary relief in the amount of approximately $229,500,000.00, and alleged numerous causes of action under various banking and criminal statutes, none of which give rise to any private causes of action.[9] The Court concluded that amendment would be futile and dismissed the entire case by Order signed February 28, 1996 [Doc. # 116]. Kaminetzky named as a defendant every individual and entity involved in any way in *Park National I* to collect a deficiency on the note in issue in that state court action.[10]

### Cullen/Frost National Bank

On December 13, 1994, Kaminetzky, acting for himself and Marta Azucena P. de Lenti-

---

litigation by the state court on March 24, 1993. That dispute became Cause No. 91–016901–A. The Park National Bank's dispute with CA1, CA5, Kaminetzky and Weiss remained Cause No. 91–016901 and became *"Park National I"* in this Court. *See infra* at 580–81.

**8.** Only CA5's bankruptcy still is pending. CA1's bankruptcy petition was dismissed on April 4, 1995.

**9.** Kaminetzky sued under 12 U.S.C. §§ 29, 93, 1818, 1833a; 18 U.S.C. §§ 1007, 1344, 1503, 1951; and 28 U.S.C. § 2201.

**10.** This is the same suit Kaminetzky, Weiss and Whalen removed to this Court as Civil Action Nos. 94–2314 (*Cullen*), 94–2950 (*Nissan*) and 94–2977 (*Park National I*).

no, filed another *pro se* suit, *Kaminetzky, et al. v. Frost National Bank of Houston, et al.,* Civil Action No. 94–4207. This suit was brought against Frost National Bank, Cullen/Frost Bankers, and a total of 44 additional defendants, including the Federal Deposit Insurance Corporation in its capacity as receiver for "certain" failed Texas banks. This suit was similar to *Park National II* in that Kaminetzky's dissatisfaction appears to have arisen from a loan by Cullen Center Bank (later apparently acquired by Frost National Bank and known as Frost National Bank or "Cullen/Frost"), on which Kaminetzky or a related entity had defaulted. Kaminetzky appears to have used this suit against Frost National Bank and Cullen Center Bank as a defensive tactic to respond to the civil action the latter had filed against him in state court to recover the deficiency on the loan, *i.e.,* the *Cullen* action, *supra.* Kaminetzky's approach, as in *Park National Bank II,* was to name as defendant every person who was "even tangentially involved in that case and even several judges who presided over the state action." Order, dated Feb. 28, 1995, at 2 [Doc. # 20].[11] On February 28, 1995, Judge Hittner dismissed this action for failure to state a claim upon which relief may be granted as to any of the causes of action alleged. *Id.* at 3–8.[12]

In reviewing the purported causes of action and the tactics of Kaminetzky, acting *pro se,* in *Park National II* and *Cullen/Frost National Bank,* Judge Hittner determined that Kaminetzky had significantly abused the judicial system. He therefore issued a "Preclusion Order" on March 17, 1995, in an attempt "to prevent Kaminetzky from further filings of meritless actions related to the claims alleged in the aforementioned cases." *Kaminetzky v. Frost National Bank,* 881 F.Supp. 276, 277 (S.D.Tex.1995). Judge Hittner found that "[t]hese measures are necessary to prevent further unnecessary and costly expenditure incurred by the judicial system and the defendants in adjudication of and defending against these types of actions." *Id.* Judge Hittner specifically ordered that:

(1) ... Kaminetzky or any individual or entity acting on his behalf, or Kaminetzky acting on behalf of any other individual or entity, is hereby enjoined from filing any action, complaint, or motion that directly or tangentially raises an issue alleged in cause numbers H–94–3055 [*Park National II* ] and H–94–4207 [*Cullen/Frost National Bank* ] in this Court without first obtaining leave of Court from the Chief Judge of the United States District Court for the Southern District of Texas....

(2) any new motion, complaint, or action which Kaminetzky seeks to file in this Court shall be accompanied by a Motion for Leave to File Complaint/Motion.

*Id.* at 279. Kaminetzky was warned that:

(3) failure ... to comply with this Order or continuous filings of any vexatious and/or frivolous complaints, motions, or actions raising similar issues addressed in the above referenced cases may result in the imposition of sanctions and/or a criminal contempt citation.

*Id.*

### Second Removal of Cullen.

Kaminetzky ignored this warning. On September 7, 1995, Kaminetzky, Weiss, and ICC, again represented by Whalen, removed to this Court—for the second time—the *Cullen* action which was docketed this time in this Court as Civil Action No. 95–4403 and assigned to Judge Hittner. The removing parties contended that the case was related to the ICC bankruptcy proceeding, which had been filed in June 1994. After a show cause hearing held October 11, 1995, Judge Hittner granted the motion by Cullen Center Bank to remand and denied Whalen's motion to withdraw as counsel. The Court again explained removal doctrines to Kaminetzky, Weiss and Whalen. The Order granting remand [Doc. # 15] issued on October 20, 1995, stated in pertinent part:

---

**11.** Only five summonses ever were issued in this case.

**12.** Kaminetzky sued in this action under 12 U.S.C. §§ 29, 93, 1818, 1833a; 18 U.S.C. §§ 1007, 1344, 1503, 1951, 1861; 11 U.S.C. § 522(a); and 28 U.S.C. § 2201.

Cullen Bank originally filed this action in the 129th Judicial District of Harris County, Texas, seeking to collect from defendants lease rental payments on real property.... After the state court granted partial summary judgment against defendants, Investment Choices Corporation ("ICC") filed for bankruptcy and removed the case on that basis.... Cullen Bank also filed a motion to remand and United States District Judge John Rainey remanded the action on January 18, 1995. The attorney's fees issue was to be tried in the 129th District Court on September 8, 1995, but late on September 7, 1995, defendants again removed the case to federal court. This Court now considers Cullen Bank's motion to remand the attorney's fees issue back to the 129th District Court. Removal statutes are to be narrowly construed to restrict removal and all doubts as to removability are to be resolved in favor of remanding the cause to the state court.... Normally, a case is removable if a question of federal law appears on the face of the plaintiff's complaint. *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 593 (5th Cir.1993). However, where grounds for removal do not appear on the face of the complaint, removal may still be appropriate where the defendant receives a "paper from which it may first be ascertained that the case is ... removable." 28 U.S.C. § 1446(b).

In the instant case, ICC removed this action pursuant to 28 U.S.C. § 1446(b), alleging that plaintiffs violated provisions of 11 U.S.C. §. 502 and 15 U.S.C. § 1692. Specifically, defendants claim in their Notice of Removal that Cullen Bank produced invoices—or "papers" for purposes of § 1446(b)—to defendants in order to support their claim for attorney's fees. Defendants argue that the invoices "show on their face that many of the charges for attorney's fees ... are for items or matters which have no connection with the lease rentals for which Plaintiff has sued Defendants." ... Defendants further state in their Amended Notice of Removal that "this removal is based upon the premise that Cullen Bank is wrongfully violating 11 U.S.C. § 502 by claiming and attempting to collect excessive attorney's fees from Defendant ICC, a bankrupt debtor." ... A case may not be removed on the basis of a defense or a counterclaim by the defendant even if the defense or counterclaim raises a federal question. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–12 [103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420] (1983); *Anderson,* 2 F.3d at 593; *Beers v. North American Van Lines, Inc.,* 836 F.2d 910, 913 (5th Cir.1988). As aforementioned, defendants base their removal on plaintiffs' alleged violation of federal law. Since defendants base their removal on what is essentially a defense or counterclaim, there is no basis for federal jurisdiction and the case must be remanded to the 129th District Court....

Docket No. 15, at 1–3 (certain citations omitted; footnotes omitted). The Court noted in a footnote that ICC had "presented essentially the same issue" over two years earlier when *Cullen* was first removed and was subsequently remanded by Judge John Rainey for the same reasons cited by Judge Hittner.[13]

After notice and a hearing, Judge Hittner issued an Order of Criminal Contempt and ordered Kaminetzky incarcerated for 48 hours. Order of Contempt and Commitment, December 1, 1995 [Doc. # 30].

### Second Removal of Park National I

Incredibly, on the night of February 13–14, 1996, Weiss and Kaminetzky removed *Park National I,* Cause No. 91–16901, for the second time, having been remanded once by Judge Ewing Werlein on September 22, 1994.[14]

### III. EARLY HISTORY OF THE LITIGATION AT BAR BY Kaminetzky, WEISS AND WHALEN

A detailed summary of the tortuous history of *Park National Bank of Houston v. Dov*

---

**13.** Judge Hittner apparently was unaware of the removals of *Nissan* and *Park National I* before Judges Hughes and Werlein, involving Park National Bank.

**14.** *See supra* footnote 7 and also text at 575–76.

*Avni Kaminetzky, Howard Weiss, Choice Acquisition No. One, Inc. and Choice Acquisition No. Five, Inc.,* Case No. 91–016901, in the 333rd Judicial District Court of Harris County, Texas, also is necessary to a full understanding of the reasons that sanctions are warranted in this case.[15]

The state court litigation, to the extent relevant to this decision, involves a suit on a promissory note executed by CA1 and CA5 pursuant to a purchase of a car wash facility, known as the Super Car Wash, from Park National Bank of Houston and First National Bank of Bellville. The suit also involves claims on limited guaranty agreements, guaranteeing payment of the note by Kaminetzky and Weiss. An original settlement with other guarantors besides Kaminetzky and Weiss (apparently, Nissan, et al.) resulted in Park National Bank of Houston receiving a partial payment of sums remaining on the note. A portion of the original note balance, principal and accrued interest, was satisfied through foreclosure on the real property securing the note. After the settlement, agreed interlocutory summary judgments on liability were entered against the corporations. Park National Bank pursued the deficiency in this case against Kaminetzky, Weiss, and another guarantor, Samuel Newman, whose claim was eventually settled. Kaminetzky and Weiss then were the only remaining guarantor defendants. Counterclaims filed by Kaminetzky and Weiss were resolved in favor of Park National Bank, pursuant to an interlocutory summary judgment.

Defendants Kaminetzky and Weiss apparently engaged in an extensive battle to avoid discovery and/or trial of the state court action, using removal of the case to this Court, bankruptcy filings and other litigation, as described above, as their weapons. Many of these devices were employed with the assistance of Whalen as counsel.

Just prior to the first trial setting in this case on December 7, 1992 (prior to severance of certain claims into the *Nissan* case), Park National Bank filed various motions for sanctions alleging that Defendants had failed to provide discovery and failed to provide reports of expert witnesses. Based on Defendants' discovery abuse, the State District Judge entered an order on the date of the first trial setting, striking Kaminetzky and Weiss' pleadings and entering a default judgment against them on liability. The expert witness designations were also stricken. The only remaining issues to be litigated in the case, therefore, were (i) the value of the real property in issue on the date of foreclosure on the basis of the bank's lien, and (ii) reasonable and necessary attorney's fees incurred in collection of the debt.

The case was reset on a number of different occasions thereafter. For the most part, the activity in the case consisted of Defendants Kaminetzky and Weiss' requests for continuances as to the trial setting, or for writs of mandamus. These requests apparently were denied summarily by the state court. The case was not reached during the various trial settings in 1992 and 1993.

In anticipation of the trial settings in 1994, Kaminetzky filed bankruptcy personally on August 25, 1994, and filed bankruptcy proceedings on behalf of CA1 and CA5 on September 2, 1994. *See supra* at 576.[16] Whalen represented the Debtors in each of these cases. The automatic stay resulting from the bankruptcy filings, *see* 11 U.S.C. § 362, prevented the trial of this case that had been scheduled for August 29, 1994.[17]

---

**15.** Many of the facts in this summary are taken from the Affidavit of John Wesley Wauson, submitted as an unnumbered Exhibit to Plaintiff's Response to Show Cause Order [Doc. # 13], and supporting exhibits submitted in connection with the sanctions hearing. Defendants have not submitted controverting evidence material to the matters described therein.

**16.** *See In re: Choice Acquisition No. One, Inc.,* Bankruptcy Case No. 94–46087–H4–7 (S.D.Tex.); *In re: Choice Acquisition No. Five, Inc.,* Bankruptcy Case No. 9446088–H4–7 (S.D.Tex); and

*In re: Dov Avni Kaminetzky,* Bankruptcy Case No. 94–45761–H3–7 (S.D.Tex.). Kaminetzky testified at the sanctions hearing that the CA5 bankruptcy case was filed because a state court personal injury suit against CA5 had been filed and a large judgment was imminent. No documentary proof of this suit or judgment was presented to the Court.

**17.** Kaminetzky's and Weiss' delay tactic worked. The automatic stay in CA5's bankruptcy case was not lifted until February 8, 1995, upon motion of Park National Bank [Bcy. Doc. # 33].

*Park National I* first was removed on August 26, 1994 based on the filing of Kaminetzky's bankruptcy and was assigned to the Honorable Ewing Werlein, Jr. Judge Werlein, after oral argument on the motion on September 22, 1994, granted a motion to abstain and remand. Whalen argued that the case should not be remanded because he was intending to file a federal counterclaim in the state court action alleging RICO violations. Judge Werlein advised Whalen of the penalties under Rule 11. *See* Transcript of Remand Hearing, Sept. 22, 1994, at 16–17 [Doc. # 12].

Kaminetzky's personal bankruptcy case was dismissed on September 30, 1994, due to Kaminetzky's failure to file a mailing list of creditors. Defendants also voluntarily dismissed the bankruptcy proceeding for CA1 on April 4, 1995. Only the bankruptcies of CA5 and ICC are still pending.[18]

Judge Werlein's September 22 admonishments may have been heeded by Whalen, who did not file a RICO action on behalf of Kaminetzky and Weiss, particularly since *Park National I* was remanded the same day as the hearing. Five days later, however, on September 27, 1994, Kaminetzky filed his first amended petition in *Park National II* to add a claim for alleged violations of RICO. Ultimately, Judge Hittner dismissed Kaminetzky's conspiracy/RICO suit (*Park National II*) for failure to state a claim, as well as for his purported representation of corporations and others when he was not an attorney authorized to practice law.

## IV. *PROCEEDINGS GIVING RISE TO THE SANCTIONS HEARING*

In the early morning of February 14, 1996, immediately before the state court's trial setting for *Park National I,* the case was removed to this Court for the second time. Weiss purported to be the removing party in the Notice of Removal.

Neither Park National Bank's representatives nor Stephen Hunt (as attorney for CA1

and CA5 and two other clients, Mr. Darwish and Mr. Gilaad) were notified of the removal. On the morning of February 14, 1996, they appeared for trial as scheduled. Whalen, Kaminetzky and Weiss did not appear. After the trial had been underway for 45 minutes, Whalen called the Court to advise that the case had been removed.

Park National Bank and CA1 and CA5 each immediately filed motions to remand the case to state court. *See* Docs. # 2A, 5.

Weiss asserted in his Notice of Removal that Park National Bank had violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* He asserted that he had qualified himself as a Plaintiff under the Act's "whistle blower" or *"qui tam"* provisions, 31 U.S.C. § 3730(b), that he was asserting a claim against Park National Bank, and that Park National Bank was seeking to extort money from him "in retaliation for the *qui tam* action." Notice of Removal [Doc. # 1], ¶ 1, at 1. He further alleged that the facts serving as the basis for this claim had become known to him on February 13, 1996, when his counsel received "by fax transmission certain false affidavits showing on their face that the affiants are attempting to wrongfully extract money from defendant Weiss by subjecting him to the effect of a wrongful agreed judgment against the Texas corporations known as [CA1 and CA5]." *Id.* ¶ 3, at 2. Weiss also stated that, on February 13, 1996, his counsel received a letter from Plaintiff Park National Bank's counsel which "shows on its face that a large portion of the charges for attorney's fees . . . are for items or matters which have no connection with this case." *Id.* ¶ 5, at 2. He additionally asserted that he is qualified as a federal declarant under 12 U.S.C. § 4210 *et seq.* and is entitled to protection under 12 U.S.C. § 4212, and that therefore he is entitled to bring a civil action under 18 U.S.C. § 3059A(e). *Id.* ¶ 7, at 3. No legal authority was provided as to Weiss' or Kaminetzky's standing to assert these claims, nor was any other legal authority provided for

---

**18.** On September 2, 1994, the day the CA1 and CA5 bankruptcies were filed, Kaminetzky filed *Park National Bank II,* his *pro se* action before Judge Hittner. *See supra* at 8. As noted previously, Kaminetzky named a total of 20 defendants. According to Wauson's Affidavit, on the

day that Kaminetzky filed *Park National II,* he personally called the offices of the Park National Bank's counsel (Wauson) to advise that the suit was being filed; he offered to dismiss the suit if Park National Bank would drop its claims in *Park National I.*

this removal. Weiss and Kaminetzky argue in later filed materials that documents produced by Park National Bank on February 13, 1996, itemizing the attorney's fees being sought by Park National Bank, along with several other documents, formed the basis for the removal. *See* Defendants' Response to the Court's Order to Show Cause [Doc. # 14], Exhibit D (Weiss' Affidavit) at 4; Exhibits E and F ("Park National Bank's Interest Calculation" and attorney's billing records, respectively).

According to counsel for Park National Bank, on February 13, 1996, the parties exchanged documents in preparation for trial the next day. Wauson Affidavit (submitted as an unnumbered Exhibit to Plaintiff's Response to Show Cause Order [Doc. # 13]). These materials, however, provide no support for Defendants' assertions in the Notice of Removal concerning an anticipated federal claim by "Plaintiff" in this action.[19]

On February 15, 1996, this Court found from the materials filed at the time of removal that the alleged bases for removal were patently insufficient; the Court immediately remanded the case to the 333rd Judicial District Court of Harris County. Order Granting Remand, Feb. 15, 1996 [Doc. # 6].[20] This Court held, as have several of the prior federal courts with cases removed by Kaminetzky, Weiss and Whalen, that a defendant may remove a state court action to federal court only if the action originally could have been filed in federal court and that a case may *not* be removed on the basis of an alleged defense or counterclaim. *Id.* at 4–5; 28 U.S.C. § 1441; *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir.1993).

Weiss' contention, for removal jurisdiction that his receipt of documents during final preparation for trial created a basis for removal because it raised a new federal claim that he and Kaminetzky (Defendants in this case) wanted to assert under the False Claims Act, has no support in the facts or law. Weiss, Kaminetzky and Whalen had been instructed on this rule of law on no less than two prior occasions by Judges Rainey and Hittner, as described above.

After remand, on February 19, 1996, trial apparently commenced on the damages and attorney's fees issues.[21]

## V. EVIDENCE ADDUCED AT THE SANCTIONS HEARING AND THE COURT'S FINDINGS

On February 21, 1996, this Court issued an Order to Show Cause [Doc. # 7] directing the parties to state why sanctions, attorney's fees and costs should not be imposed on Kaminetzky, Weiss and/or Whalen for removing this action and/or for violating Judge Hittner's Preclusion Order. A hearing was set for March 8, but adjourned at the parties'

---

**19.** Moreover, Park National's counsel represented to the Court that he had various conversations with Whalen during the afternoon of February 13, 1996 concerning trial exhibits and other documents, but that Whalen never advised that he or his clients intended to remove the case.

**20.** The Court reviewed the pleadings and other matters of record of the removed state case, which were submitted with Weiss' Notice of Removal and in response to the Order to Show Cause. It is clear that there was no claim in Park National Bank's complaint against Weiss that raised a federal issue, nor was one raised by the documents produced to this Court from Plaintiff. Indeed, Weiss' contention as to federal jurisdiction is particularly frivolous in light of the fact that no federal claim was on file by him or anyone else in the action at bar, when the case was removed. Weiss' contention that he *intended* to file a federal counterclaim is hollow and legally immaterial.

**21.** At a pretrial conference on Friday, February 9, 1996, Whalen unsuccessfully had sought a continuance based primarily upon an alleged health problem. State District Judge Tad Halbach set the case for trial on or about Wednesday, February 14, 1996. Trial was set to begin in State Court on Friday, February 16, 1996. According to Wauson's Affidavit, the case could not proceed, because Whalen allegedly had checked himself into the hospital for observation. Whalen checked out of the hospital on the afternoon of Friday, February 16, 1996. Promptly after the remand, Defendants dismissed their counterclaim. Ironically, at the beginning of the trial, the trial court set aside any default judgments against the Defendants. The trial court was then advised by Whalen that the only issues involved in the case were the same issues that existed while the default judgments were in force in the case, *i.e.*, the value of the property on the date of foreclosure and reasonable attorney's fees.

request until March 14, 1996 (the "Sanctions Hearing"). The evidence introduced by affidavit, live testimony and argument at the Sanctions Hearing establishes cause for sanctions.

Kaminetzky and Whalen challenged Park National Bank's counsel's and Stephen Hunt's entitlement to fees on the grounds that: (i) Hunt is not authorized to act as CA1 and CA5's counsel and thus is entitled to nothing; (ii) Hunt's fees were generated in connection with claims that were severed out of the case removed to this Court; (iii) Park National Bank's counsel's fees are excessive and were unnecessary. They also argued that removal of this case was not grounds for sanctions.

Kaminetzky testified that on the afternoon of February 13, 1996, when he and Weiss first saw Park National Bank's attorneys' time sheets and the Bank's calculations of damages, Weiss became convinced that time had been spent and payments made (in Kaminetzky's and allegedly in Weiss' view) on matters other than collection of the debt in issue in this case. Kaminetzky stated then the documents supported a claim of violation of the Federal False Claims Act, usury laws, 12 U.S.C. §§ 85, 86 and other federal statutes. Notice of Removal, ¶¶ 1, 3–5 [Doc. # 1]. The Notice of Removal also stated that since apparently the federal government was involved in paying for these services, these documents were evidence in support of Kaminetzky's and Weiss' *qui tam* action in the Eastern District of New York, in which they allege violations of the Federal False Claims Act by Park National Bank and numerous others.[22] *Id.* ¶ 1, 6–7. *United States of America ex rel Dov Avni Kaminetzky a/k/a Dov K. Avni and Howard Weiss v. Nissan, et al.,* Civil Action No. 95–3954 (E.D.N.Y.) (filed September 28, 1995). Kaminetzky falsely listed himself as "attorney of record" in the *qui tam* action.

Kaminetzky and Weiss also contended that the documents from Park National Bank or its counsel "constitute the 'other papers' *which form part of the Plaintiff's complaint* and entitle respondent Weiss to remove the state court case pursuant to 28 U.S.C. § 1446(b)." Response to the Court's Order to Show Cause, ¶ 3.1 (emphasis in original); Notice of Removal, ¶ 6. They do not address the fact that Park National Bank was the "plaintiff" in the case being removed and that their Notice of Removal referred only to purported federal claims *Defendants* Kaminetzky and Weiss contended they discovered on February 13 that they could assert.

The Court construes Kaminetzky in his testimony to assert also that he believed the documents were relevant to Weiss' and Kaminetzky's *qui tam* claims, their own counterclaim for conspiracy filed in the state court action on January 29, 1996 (after the case was pending over 4 years), or potential federal RICO or other claims to be asserted in the instant action.

Kaminetzky testified that *Weiss* wanted to remove—indeed, insisted on removing—this case to federal court for the second time. Kaminetzky also testified that he did not want to do so, apparently because of the Preclusion Order, and that he personally did legal research to ascertain how Weiss could remove the case without Kaminetzky joining in the removal, while counsel Whalen drafted the removal papers until "all hours" that evening. Kaminetzky stated that he ultimately decided he had to join in the removal if the removal was to be done at all, and therefore agreed to it. The Civil Cover Sheet lists Kaminetzky as the second Defendant, after Weiss, unlike all the prior pleadings in this case. (There is no explanation as to why Co–Defendants CA1 and CA5 were not listed as parties also seeking removal.)

Kaminetzky also testified that in his opinion the instant suit was not related to the *pro se* cases (*Park National II* and *Cullen/Frost*), the matters in which Judge Hittner's Preclusion Order was entered. Kami-

---

22. In or about early 1995, Kaminetzky and Weiss filed a counterclaim against Park National Bank alleging a conspiracy that is very similar to the conspiracy allegations set forth in the federal court litigation, *Kaminetzky v. Park National Bank, et al.,* Civil Action No. 94–3055 (Hittner, J.). The counterclaim may have been filed in order to give some support to Defendants' removal petition in the instant action, although that was not the articulated basis for the removal.

netzky tried in vain to articulate what he claimed were four different conspiracies that he had alleged in the *pro se* suits and other litigation against Park National Bank and others. The Court finds that he was unable in his testimony to distinguish meaningfully among the conspiracies and that in fact the matters in this action are not unrelated to the matters addressed in the Preclusion Order.

Whalen, in his own defense against the possibility of sanctions, stated at the hearing that he performed "several" hours of legal research on *qui tam* actions (and possibly removal issues) and determined that removal was feasible based on what his clients, Kaminetzky and Weiss, were telling him about the *qui tam* lawsuit in New York. He acknowledged that he did not see any of the papers filed in that action prior to the removal here. He also acknowledged he had no legal authority to support his conclusions and had, at most, a general awareness of the False Claims Act. He provided no legal citations or other authority to establish Weiss' or Kaminetzky's standing to sue under the False Claims Act. He produced nothing to support arguments to respond to the prior adverse rulings by Judges Rainey and Hittner rejecting similar removal attempts. He failed to address the fact that the documents on which his clients purported to rely for removal jurisdiction were unrelated to any federal claim by the "plaintiff" (Park National Bank) in the removed case. In addition he failed to explain why he did not instruct Kaminetzky to satisfy the requirements of the Preclusion Order.

The Court rejects Kaminetzky's arguments as frivolous. None of the documents produced on February 13 by Park National Bank, Plaintiff in the litigation at bar, relate to a *federal* claim asserted by Park National Bank, which is the basic requirement under Defendants' removal theory.

Moreover, as to the scope of the Preclusion Order, Kaminetzky's attempt to differentiate the matters in *Park National II* from the loan and deficiency on which the instant suit is based is totally unavailing. The four allegedly different conspiracies are, even in Kaminetzky's own attempted explanations, inextricably intertwined with the issues and claims in the suits giving rise to the Preclusion Order. The claims and issues involve in large part the relationship that Kaminetzky and Weiss, and their affiliated companies, had with Park National Bank and others relating to the debt Park National Bank seeks to collect.

It is also clear that Weiss and Kaminetzky have been acting in concert throughout the litigation described herein. They always have been represented by Whalen. According to unrefuted sworn representations by counsel for Park National Bank, they have participated together in each business transaction in issue before this Court.[23]

Although Weiss allegedly was responsible for the removal and therefore had his name included on the Notice of Removal, and Kaminetzky's name was not listed as a removing party, Weiss did not appear at the Sanctions Hearing to explain the factual or legal basis for the removal. Instead, he submitted an affidavit that at best is a rambling exposition on his views of Park National Bank's alleged wrongs in 1989 and 1991 in connection with the state court litigation. It does not in any way address the grounds for removal, the Preclusion Order, or the thought process that resulted in his being the named party who removed the case.[24] Park National Bank

---

**23.** Another example is that during Section 341 creditors' meetings held in the three bankruptcy cases Kaminetzky disclosed that Weiss (or his family) provided the financing for "FRAUD BUSTERS," a vehicle Kaminetzky is using to retaliate against Park National Bank and others, for discovery, for his alleged "investigation," and for the bringing of these various lawsuits. In addition, Weiss, through Whalen, has adopted the pleadings filed in New York even though those pleadings were filed *pro se* by Kaminetzky. For example, the First Amended Petition filed by Kaminetzky in the *qui tam* litigation against Park National Bank, recites that Kaminetzky acts as "FRAUD BUSTERS" and is "joined therein by Howard Weiss, a resident of the State of New York."

**24.** Weiss' affidavit and exhibits submitted to this Court lack probative value also because the only potentially probative exhibit he submitted ("W–H") (which was supposed to evidence his involvement in the *qui tam* lawsuit) is incomplete and not notarized.

argues that Weiss' non-appearance at the sanctions hearing is consistent with his previous behavior of non-involvement. This is supported by Kaminetzky's rendition of the facts leading to the removal on February 14, 1996.[25]

Thus, the Court views with great skepticism the allegation in the Notice of Removal, signed only by Whalen, that Weiss personally sought to remove this action to federal court. This allegation is not signed or sworn to in any way by Weiss and is incongruent with every other act taken in the case. The Court finds that Kaminetzky has been the prime actor and decision-maker in every respect relating to this and all his "team's" litigation. The Court does not find credible Kaminetzky's testimony that he did not want to remove this case. Kaminetzky's testimony reveals that he is adept at, and apparently interested in, obfuscating or confusing matters so that it is difficult for others to learn the truth as to the business dealings in which he and Weiss have engaged.

The evidence also demonstrates that Weiss consistently aids and supports Kaminetzky in his finances, decisions and strategies, and that Whalen, as counsel, facilitates or implements Kaminetzky's strategies. These three have acted in concert to assist each other fully in achieving the goals that Kaminetzky and Weiss dictate, regardless of the existence of viable legal bases.

In this Court's view, Kaminetzky's, Weiss' and Whalen's attempt to justify their removal of this case in a way that would avoid the Preclusion Order fails miserably. Even if Kaminetzky's removal explanation were true,

the removal violated the Preclusion Order. A motion for leave to file this removal action should have been made. This Court thus finds that Kaminetzky intentionally and in bad faith violated the Preclusion Order, abused the Court process, and wasted judicial resources. The Court further finds that Weiss and Whalen knowingly and in bad faith aided and acted in concert with Kaminetzky to do so.[26]

## VI. LEGAL DISCUSSION

### A. Sanctions pursuant to 28 U.S.C. § 1447(c)

▮ Section 1447(c) awards payments of just costs and reasonable attorney's fees incurred as a result of an improper removal. 28 U.S.C. § 1447(c). Given this Court's finding that the removal was improper and even frivolous, *see* Order Granting Remand [Doc. # 6], the imposition of both costs and attorneys' fees against the removing party may be awarded in the Court's discretion. *Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993). No finding of bad faith or frivolity is required; the sanction is designed to be remedial rather than punitive. *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 447 (9th Cir.1992) (noting that a 1447(c) award is "reimbursement"). Therefore, the Court concludes that Defendants Weiss (who ostensibly filed) and Kaminetzky (who masterminded) the removal jointly and severally are responsible to pay the costs and attorneys' fees incurred by Plaintiffs Park National Bank, as well as costs incurred by or on behalf of CA1 and CA5 in connection with responding to the notice of removal.

---

**25.** From the evidence before the Court, Weiss did virtually nothing after allegedly giving the directive to remove the case to federal court to prevent the state court trial from proceeding. According to unrefuted assertions by Park National Bank, Weiss has appeared in connection with this matter on only one occasion, during the taking of his deposition in 1992. Weiss did not appear at the state court trial and never personally answered an interrogatory in the state court case or taken any other action. All interrogatory responses and other response filed by Whalen or filed otherwise in the case were signed by Kaminetzky, either individually or allegedly as agent for Weiss.

**26.** Counsel for Park National Bank informed the Court that Kaminetzky's conduct in violation of the Preclusion Order has continued since this Court's sanctions hearing. In a bankruptcy action in the Southern District of Texas, Houston Division, Defendant Kaminetzky has attempted to notice and prosecute a Rule 2004 examination of Donald J. Najvar, who was a defendant in *Kaminetzky v. Frost Nat'l Bank.* The topics listed in the notice of examination relate to those that gave rise to the Preclusion Order, but Kaminetzky has failed to seek permission from the Chief Judge to take this testimony. *See* Letter to Court from John Wesley Wauson, dated July 2, 1996, and attached documents. This is a further violation of the Preclusion Order.

Park National Bank incurred a total of $5,751.70, which includes attorney's fees of $4,717.50, as well as costs for parking and mileage. *See* Affidavit of John Wesley Wauson (attached as unnumbered Exhibit to Park National Bank's Response to Court's Order to Show Cause [Doc. # 13] ), at ¶ 20.

■ Steven Hunt alleges in his motion, purportedly on behalf of Defendants CA1 and CA5, that his clients incurred costs, expenses, and attorney's fees in the amount of $6,181.00. Of that sum, $2,581.00 was for costs for travel and hotel for witnesses' appearance at the state court trial and the costs of depositions that became necessary due to cancellation of the state trial in light of Defendants' improper removal to this Court. Witnesses had traveled to Houston for trial and CA1 and CA5 needed to perpetuate these witnesses' testimony in case they could not be present at trial when a new date was set. CA1 and CA5 also incurred attorneys' fees in the amount of $3,600.00. *See* Doc. # 12. The dispute (unresolvable by this Court on this record) over Mr. Hunt's authority precludes the Court's award of attorney's fees.[27] The Court nevertheless can and will award reimbursement of all out-of-pocket expenses for witnesses' travel and depositions.

The Court finds that the requested expenses and costs are reasonable and fully justified, rather than self-imposed or mitigatable. This finding is based on the parties' written submissions, the evidence at the Sanctions Hearing, and on the lack of persuasive objections by Defendants.

Therefore, the Court awards Park National Bank $5,751.70 for attorneys' fees and costs, and awards to Hunt a total of $2,581.00 to be disbursed as necessary to reimburse out of pocket litigation costs incurred by his witnesses or clients as a result of the improper removal. Weiss and Kaminetzky shall pay these fees and costs on or before October 30, 1996.

**27.** *See, e.g.,* Transcript of Remand Hearing in Civil Action No. 94–2977, Sept. 22, 1994, at 7, 19–20.

**28.** Black's Law Dictionary defines "common fund doctrine" as providing that "a private plaintiff, or plaintiff's attorney, whose efforts create,

## B. *Inherent Power of the Court and Violation of the Preclusion Order*

■ Federal courts are invested with the inherent power to impose sanctions for abuse of the judicial process. *Chambers v. NASCO,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). This power stems from the court's interest in maintaining judicial integrity and facilitating orderly and expeditious disposition of cases. *Id.* The inherent powers of a court permit it to award attorney's fees for common fund[28] cases, willful disobedience of a court order, or conduct which manifests bad faith. *Id* at 45, 111 S.Ct. at 2133. A court may also be able to fashion a sanction not contemplated by Rule 11 or federal statutes, but the "threshold for the use of inherent power sanctions is high." *Elliott v. Tilton,* 64 F.3d 213, 217 (5th Cir.1995). The court's discretion is limited in that it must make a specific finding of bad faith. *Id.*

■ Even under the Fifth Circuit's stringent standards, the conduct by Defendants and their counsel warrants a finding of bad faith and intentional disobedience of the Preclusion Order. Kaminetzky and Weiss devised the plan and Whalen prepared and signed the Notice of Removal in this case.

After considering the affidavit of Weiss, the testimony of Kaminetzky, and the statements of Whalen during the Sanctions Hearing, as well as the written submissions, the Court finds and concludes as a matter of law that none of these men genuinely believed that they had a legally valid basis for removal of the state case to this Court. Kaminetzky's and Weiss' patent lack of reasoning addressing the requirement that there be a federal claim asserted by the "plaintiff" in the state court action (Park National Bank) for proper removal is clear evidence of bad faith. The added fact that they insisted on relying on a non-lawyer's hurried legal re-

discover, increase, or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorney's fees." BLACK'S LAW DICTIONARY 276 (6th ed.1990).

search (by a person who had earlier filed and been sanctioned for pursuing frivolous theories) is more such evidence. Finally, a bad faith finding is supported by the fact that there was no colorable federal claim whatsoever that could be asserted by either the Defendants (Kaminetzky and Weiss) or the Plaintiff in this action arising from the purported discovery of new information. Rather, Defendants seem to have operated on the hope that a "new" theory for removal would accomplish their goal of delay of the state court trial. They seem to have figured that they could dismiss their frivolous case later, after the delay had been accomplished.

The Court finds it necessary to sanction both the clients, Kaminetzky and Weiss, and the attorney, Whalen, for indulging and assisting in the flagrantly abusive conduct of his clients. They all collaborated to remove this lawsuit on the eve of the state court trial, alleging a legal basis similar to that previously rejected by two Federal Judges. Whalen's, Kaminetzky's and Weiss' justifications for removal in this case despite the rulings in Civil Action Nos. 94–2314 (*Cullen*) (Judge Rainey) and 94–2977 (*Park National II*) (Judge Hittner) lack any merit; each removal was premised on an unpled defense or counterclaim these individuals claimed they sought to assert in a collection suit filed by Park National Bank or Cullen Center Bank. In the prior instances, Judges in this Court wrote clear legal opinions setting forth the applicable law. These doctrines were virtually ignored by Whalen, Kaminetzky and Weiss.

It is uncontroverted that the instant removal was made without adequate analysis by counsel—indeed, with virtually no analysis—of the legal and factual bases for the action. Whalen admitted that he did not research pertinent removal law, choosing instead to rely on the alleged desires of one of his clients, Weiss, to avoid the state court trial, and the alleged legal research by Kaminetzky. Whalen was fully aware that neither Kaminetzky nor Weiss are attorneys. At the Sanctions Hearing, Whalen was at a total loss to explain the factual bases of his clients' assertion that federal jurisdiction could be supported by the pendency of a *qui tam* or "whistle blower" complaint which was pending in a different district and different state, and of which counsel had no knowledge or understanding.[29] Further, at the Sanctions Hearing, Whalen did not attempt to justify the legal basis for removal, implicitly acknowledging that there was none. Yet, Whalen knowingly went along with his clients' improper scheme, failing to provide any independent and informed legal advice to his non-attorney clients. He did not require the clients to wait on their unusual plan until appropriate research by a trained lawyer had been done to determine if the removal was viable, independent of the Preclusion Order. The Court cannot conceive of a clearer example of a bad faith filing.

The Court further concludes that this conduct by Defendants and their counsel was unreasonable under the circumstances. There was no reason to remove this case merely because trial was beginning. Indeed, this fact counseled against removal. Park National Bank's arguments for attorney's fees were previously known, or should have been known, to Defendants and defense counsel. The fee question was the sole remaining issue of Park National Bank's claim for the last several years. Kaminetzky's and Whalen's testimony at the hearing established that the allegedly new information (Park National Bank's counsel's time sheets in connection with their claim for attorneys' fees) pertained to Defendants' defenses or a putative counterclaim, if anything.

The Court has also considered Defendant Weiss's choices to rely on his affidavit in response to the Order to Show Cause, to absent himself from the Sanctions Hearing, and to fail to explain the removal decision or to meaningfully justify his absence. Weiss' affidavit is entirely non-responsive to the issue posed by the Court in the Order to Show Cause, and fails to address the viability of the grounds for removal. Whalen explained at the hearing that Weiss was out of state

---

**29.** No law has been cited, and the Court is aware of no authorities, that will support removal by Defendants in a state court action on the ground that documents have been produced by Plaintiff that allegedly support Defendants' theory in a different federal action (*qui tam* or otherwise).

and they did not realize that he "had to be" at the hearing. Thus, the Court has no credible evidence before it that Weiss was the motivation behind removal. Kaminetzky's explanations of Weiss's and his own motivations amount to nothing more than lame cover up for their true motivation, which was to avoid the imminent trial of the action scheduled to begin that day in state court.

Defendants' and Whalen's efforts to avoid the reach of Judge Hittner's Preclusion Order, of which all parties were aware, is an additional factor the Court has considered in finding and concluding that Defendants and Whalen acted in bad faith in removing this case. At a minimum, Kaminetzky, Weiss and Whalen should have filed this case as a "related" action to *Park National II* and simultaneously should have sought leave of the Chief Judge to remove the case. Defendants' excuse that there was insufficient time to make this motion in light of the trial setting is without merit. Even if the Court accepted Kaminetzky's highly improbable version of the events, neither Kaminetzky nor Whalen should have permitted Weiss, a non-attorney client, to dictate a procedural tactic without any legal basis.

The Court thus concludes that Kaminetzky in bad faith and knowingly violated Paragraph One of the Preclusion Order through Weiss and Whalen's actions, which were taken with Kaminetzky's assistance and on his behalf The Court further concludes that Weiss and Whalen acted in bad faith by facilitating the removal with knowledge that there were no valid grounds for removal and by attempting to evade the Preclusion Order.

The Court concludes that each Kaminetzky, Weiss and Whalen [30] shall pay up to $10,000.00 to cover all Park National Bank's attorneys' fees and expenses incurred in ob- taining this sanction order, incurred in responding to prior improper removals (for which no prior monetary sanctions have been imposed), and incurred in defending against Kaminetzky's frivolous federal court suits. This sanction is to be paid within 10 business days after Park National Bank's counsel submits to Whalen an affidavit listing all the fees and expenses it charged its client for the litigation described in this opinion. This sanction is to cover fees and expenses Park National Bank incurred over and above the charges to obtain remand of this case. The Court believes that this sanction is the very least that will adequately punish this repeated intentional wrongful conduct.

### C. *Rule 11 of the Federal Rules of Civil Procedure*

The imposition of sanctions under Rule 11 is warranted when the conduct of the attorney or party was unreasonable under the circumstances. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 870 (5th Cir.1988). The four factors that this Court is to consider in its decision whether or not to impose a sanction are the following:

(1) What conduct is being punished or is sought to be deterred by the sanction?

(2) What expenses or costs were caused by the violation of the rule?

(3) Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?

(4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?

*Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir.1993).

Under these four factors, the Court finds that Rule 11 sanctions against each

---

30. The award of sanctions against Whalen is further supported by 28 U.S.C. § 1927, which provides that any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 534 (5th Cir.1996). The improper removal of this case by Whalen, on behalf of Weiss, multiplied the proceedings, was unreasonable and vexatious, and resulted in an increase in the costs of the proceedings. *Cf. Campana v. Muir*, 615 F.Supp. 871, 874 (M.D.Pa. 1985) (setting out three-part test for award under Section 1927), *aff'd*, 786 F.2d 188 (3d Cir.1986). Therefore, the Court concludes Whalen also deserves to be sanctioned pursuant to 28 U.S.C. § 1927.

Kaminetzky, Weiss, and Whalen would have been warranted in this case if the case had been pending and the Notice of Removal had not been withdrawn within 21 days. *See* Fed.R.Civ.P. 11(c)(1)(A). The Court remanded this action shortly after its removal. There was no opportunity provided to Defendants or their counsel to correct their errors. The Court concludes that public policy dictates that the safe harbor should apply to Court initiated Rule 11 proceedings, just as the Rule applies to parties' motions. Thus, Rule 11 cannot be a basis for the above-noted sanctions.[31] The Court notes, however, that because of the *two* prior similar removals and the written Court opinions on the same doctrine that was the basis for the remand in this case, the very fact of this removal *should* be sanctionable under Rule 11. The "safe harbor" or grace period in the 1993 amendments to the Federal Rules of Civil Procedure and the policy behind it to permit an offending party to withdraw the pleading before sanctions are imposed, are the only reason for the Court to decline to rely on Rule 11, as requested by Park National Bank. *See* Section V(B), *supra*.

## VII. *SANCTIONS*

It is hereby **ORDERED** that, as a sanction under 28 U.S.C. § 1447, Weiss and Kaminetzky are jointly and severally liable for $5,751.70 to Park National Bank and for $2,581.00 to Hunt to reimburse the appropriate persons ' or entities for payment of expenses for witnesses' travel, for depositions, and for other charges associated with the cancellation of the state court trial on February 14, 1996, since the Court has found that the proven attorneys' fees, costs and expenses are reasonable under the circumstances. These sums shall be paid to the counsel for Park National Bank and CA1 and CA5 (Mr. Hunt), on or before October 31. It is further

**ORDERED** that Park National Bank's counsel, on or before October 10, 1996, shall submit to the Court and to opposing counsel an affidavit summarizing all the attorneys'

fees and expenses incurred in connection with all litigation filed in or removed to federal court by Kaminetzky, Weiss and/or Whalen, excluding the fees and expenses associated with the removal of this action, which are covered above. It is further

**ORDERED** that each Kaminetzky, Weiss and Whalen shall pay up to $10,000.00 to Defendant Park National Bank to cover his pro rata share of the total attorneys' fees and expenses (up to $30,000.00) incurred by Park National Bank in connection with litigation filed in or removed to federal court by Kaminetzky, Weiss and/or Whalen. This sanction is in addition to the sanction of payment of fees and costs imposed upon Weiss and Kaminetzky, as described in the immediately preceding paragraph. Each Defendant must pay his portion of the total on or before October 31, 1996. It is further

**ORDERED** that the following non-monetary sanctions shall be imposed on Kaminetzky and Weiss:

1. **Each Kaminetzky and Weiss** must send by certified mail, return receipt requested, a copy of this Order, with a cover letter or sheet explaining that the mailing is by Court Order, to:

- every party (if his, her or its address is known or published in the telephone directory) and every party's counsel of record in each lawsuit in which Kaminetzky or Weiss now or have been are parties (in any capacity) since 1991;
- every judge to be filed in the court record presiding over litigation in which Kaminetzky or Weiss are or have been parties in any capacity since 1991;
- every judge identified above at the judge's chamber's address, marked "courtesy copy";
- every judge presiding over any bankruptcy case or litigation in which a company affiliated with one or both of them is involved ("affiliated" here means a company in which either or

---

**31.** Unlike party-initiated Rule 11 motions, it is unclear from the language of Rule 11 that the 21–day safe harbor requirement applies when the Court has issued an order to show cause. Since this Court finds bad faith by Defendants and Whalen, there is no need to rely on Rule 11 or any need to test the issue.

both Kaminetzky or Weiss are officers or at least 10% shareholders); and

• On or before October 30, 1996, each Kaminetzky and Weiss must file under the docket number of the above-captioned case an affidavit listing each person or entity to whom the copies of this Order have been sent, with the mailing address used, and the returned green cards reflecting the recipient's acknowledgment of receipt of the mailing. If all receipts are not received by the above-noted date, those that have been received shall be filed and additional filings shall be made on the 30th of each succeeding month containing the original green cards received by Kaminetzky or Weiss since the last filing. If, after 4 months, a green card has not been returned from an person or entity in the affidavit listing the intended recipients, then Kaminetzky and Weiss shall verify the address and shall send another copy of this Order using the same procedure. A copy of the affidavit and each of the green cards shall be sent to John Wesley Wauson, counsel for Park National Bank, on the same day they are filed with the Court.

• It is recognized that to some extent the mailing lists for Kaminetzky and Weiss will overlap. In such instances, each Kaminetzky and Weiss must sign the cover letter or cover sheet bearing the caption of the litigation involved. Whalen may assist in this process, but if he does so, he must also sign the cover letters or cover sheets.

2. If either Kaminetzky and Weiss becomes involved in litigation in the future, he shall file in the court record and provide a courtesy copy of this Order to the presiding judge for the case.

3. The Court will forward to each District, Magistrate and Bankruptcy Judge in the Southern District of Texas, Houston Division, a copy of this Order.

4. This Court will file as an Appendix to the original of this Order copies of each of the docket sheets and relevant Or-

ders, for reference by other Judges of this Court or the public.

5. Kaminetzky and Weiss are prohibited from noticing or conducting depositions or Rule 2004 Examinations (whether or not previously noticed) of Park National Bank or any of the parties in 94–3077 or 94–4207 in any pending or future bankruptcy cases or proceedings without first obtaining leave to conduct such discovery from the Hon. Norman Black, Chief Judge of the Southern District of Texas.

It is further **ORDERED** as to Whalen:

1. Whalen must attend at his own expense 20 hours of continuing legal education at courses approved by the State Bar of Texas for Mandatory Continuing Legal Education credit. These courses must pertain to one or more of the following topics: federal court jurisdiction, procedure and practice; attorney ethics; and federal discovery and motion practice. At least 5 hours must be devoted to federal court jurisdiction, procedure and practice.

2. If Whalen represents a party in this Court, he must provide a copy of this Order to the judge presiding over the case and must certify in writing under oath to that judge that he has complied with these legal education requirements, and provide a detailed list of the courses attended. Failure to comply with this Order will result in monetary sanctions deemed appropriate to said presiding judge.

### APPENDICES TO THE MEMORANDUM AND ORDER GRANTING SANCTIONS, COSTS, AND FEES

1. Docket Sheet in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.*, Civil Action No. H–94–2314 (Rainey, J.)

2. Order [Doc. # 9] in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.*, Civil Action No. H–94–2314 (Rainey, J.), January 18, 1995 (remanding case to state court)

3. Docket Sheet in *Charles Nissan, et al. v. Park National Bank of Houston, et al.,* Civil Action No. H–94–2950 (Hughes, J.)

4. Order to Remand [Doc. # 15] in *Charles Nissan, et al. v. Park National Bank of Houston, et al.,* Civil Action No. H–94–2950 (Hughes, J.), February 4, 1995 (remanding case to state court)

5. Order [Doc. # 13] in *Charles Nissan, et al. v. Park National Bank of Houston, et al.,* Civil Action No. H–94–2950 (Hughes, J.), January 23, 1995 (compensating fees associated with remand)

6. Docket Sheet in *Charles Nissan, et al. v. Park National Bank of Houston v. Dov Avni Kaminetzky, et al.,* Civil Action No. H–94–2977 (Werlein, J.)

7. Order of Remand [Doc. # 11] in *Charles Nissan, et al. v. Park National Bank of Houston v. Dov Avni Kaminetzky, et al.,* Civil Action No. H–94–2977 (Werlein, J.), September 22, 1994 (remanding case to state court)

8. Transcript of Hearing Proceedings [Doc. # 12] in *Park National Bank of Houston v. Choice Acquisition 1, et al.,* Civil Action No. H–94–2977 (Werlein, J.), September 22, 1994

9. Docket Sheet in *Dov Avni Kaminetzky, et al. v. Park National Bank, et al.,* Civil Action No. H–94–3055 (Hittner, J.)

10. Order [Doc. # 116] in *Dov Avni Kaminetzky, et al. v. Park National Bank, et al.,* Civil Action No. H–94–3055 (Hittner, J.), February 28, 1995 (granting motions to dismiss)

11. Docket Sheet in *Dov Avni Kaminetzky, et al. v. Frost National Bank of Houston, et al.,* Civil Action No. H–94–4207 (Hittner, J.)

12. Order [Doc. # 20] in *Dov Avni Kaminetzky, et al. v. Frost National Bank of Houston, et al.,* Civil Action No. H–94–4207 (Hittner, J.), February 28, 1995 (granting motions to dismiss)

13. Preclusion Order [Doc. # 24] in *Dov Avni Kaminetzky, et al. v. Frost Na-tional Bank of Houston, et al.,* Civil Action No. H–94–4207 and *Dov Avni Kaminetzky, et al. v. Park National Bank et al.,* Civil Action No. H–94–3055 (Hittner, J.), March 16, 1995

14. Order [Doc. # 28] in *Dov Avni Kaminetzky, et al. v. Frost National Bank of Houston, et al.,* Civil Action No. H–94–4207 and *Dov Avni Kaminetzky, et al. v. Park National Bank, et al.,* Civil Action No. H–94–3055 (Black, J.), April 27, 1995 (denying filing affidavit of Kaminetzky)

15. Docket Sheet in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.,* Civil Action No. H–95–4403 (Hitmer, J.)

16. Order of Remand [Doc. # 16] in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.,* Civil Action No. H–95–4403 (Hittner, J.), October 20, 1995 (remanding case to state court)

17. Order [Doc. # 34] in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.,* Civil Action No. H–95–4403 (Hittner, J.), December 7, 1995 (motion for sanctions)

18. Order [Doc. # 9] in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.,* Civil Action No. H–954403 (Hitmer, J.), October 11, 1995 (contempt of preclusion order)

19. Order of Contempt and Commitment [Doc. # 30] in *USA v. Dov Avni Kaminetzky,* Civil Action No. H–954403 (Hitmer, J.), December 1, 1995

20. Order [Doc. # 15] in *Cullen Center Bank & Trust v. Investment Choices Corporation, et al.,* Civil Action No. H–954403 (Hitmer, J.), October 20, 1995 (remanding case to state court)

21. Docket Sheet in *Park National Bank of Houston v. Dov Avni Kaminetzky, et al.,* Civil Action No. H–96–0495 (Atlas, J.)

22. Order to Show Cause [Doc. # 7] in *Park National Bank of Houston v. Dov Avni Kaminetzky, et al.,* Civil Action No. H–96–0495 (Atlas, J.), February 21, 1996

23. Order Granting Remand [Doc. # 6] in *Park National Bank of Houston v. Dov Avni Kaminetzky, et al.,* Civil Action No. H–96–0495 (Atlas, J.), February 15, 1996 (remanding case to state court)

24. Docket Sheet in *Investment Choices Corporation v. Robbye Waldron,* Bankruptcy Petition No. 94–43795 (Wheless, J.)

25. Docket Sheet in *Dov Avni Kaminetzky v. Lowell T. Cage,* Bankruptcy Petition No. 94–45761 (Clark, J.)

26. Docket Sheet in *Choice Acquisitions No. One Inc. v. Robbye Waldron,* Bankruptcy Petition No. 94–46087 (Greendyke, J.)

27. Docket Sheet in *Choice Acquisitions No. Five Inc. v. Robbye Waidron,* Bankruptcy Petition No. 94–46088 (Brown, J.)